168 N.J. Super. 333 (1979)
403 A.2d 18
ELIZABETH H. SILVERMAN, EXECUTRIX OF THE ESTATE OF STANLEY H. SILVERMAN, DECEASED; AND ELIZABETH H. SILVERMAN, INDIVIDUALLY, PLAINTIFFS-APPELLANTS AND CROSS RESPONDENTS,
v.
RICHARD G. LATHROP, M.D., DEFENDANT-RESPONDENT AND CROSS APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1979.
Decided May 4, 1979.
*334 Before Judges CONFORD, PRESSLER and KING.
Mr. Leonard S. Sachar argued the cause for appellants and cross-respondents (Messrs. Sachar, Bernstein, Rothberg, Sikora & Mongello, attorneys).
Mr. Richard J. Sauerwein argued the cause for respondent and cross-appellant.
The opinion of the court was delivered by KING, J.A.D.
This case commenced as a personal injury malpractice action. The then plaintiff, Stanley N. Silverman, *335 charged defendant Dr. Lathrop, with negligence in his diagnosis and care of a lesion behind plaintiff's right knee which had allegedly metastasized. Silverman died shortly after filing suit and thereafter the trial judge granted defendant's motion for summary judgment on the personal injury-survival action because of the bar of the statute of limitations. N.J.S.A. 2A:15-3, 4. The substituted plaintiff-executrix now appeals from this dismissal of the survival action. Defendant had also moved for summary judgment on the wrongful death action (N.J.S.A. 2A:31-1 et seq.) filed by amendment after Silverman's demise on the grounds that such action was barred where the statute of limitations barred the personal injury-survival action arising from the same alleged negligence. The trial judge denied defendant's motion for summary judgment on the wrongful death action, and defendant has filed an interlocutory appeal therefrom with leave of court. Although the trial court's judgment dismissing the personal injury-survival action was technically not final in view of the continued pendency of the joined count for wrongful death, and no leave for appeal therefrom was sought by plaintiff, we grant such leave nunc pro tunc in the interest of expeditious disposition of the cause and because of the important issue of construction of our Wrongful Death Act presented by this case and the companion case, Alfone v. Sarno, 168 N.J. Super. 315 (App. Div. 1979), which we also decide today.
In April 1972 Silverman, a 42-year-old chemical engineer employed by a pharmaceutical company, noticed a small dark spot behind his knee which he thought was a blood blister. On July 7, 1972 he first consulted defendant, a dermatologist. Defendant excised the lesion but did not order a biopsy of the removed tissue. In late August or early September, Silverman noticed a black swelling at the incision site. On October 3 he returned to defendant, who then became suspicious that the original lesion had been a melanoma. An excisional biopsy was promptly performed.
*336 The pathological report diagnosing malignant melanoma was received by defendant on October 14. Defendant immediately informed Silverman of the diagnosis and of the need for specialized treatment. On defendant's advice Silverman consulted a specialist, Dr. Steinberg, on October 25 and thereafter had no contact with defendant. Silverman was admitted to Memorial Hospital in New York City on October 31 and underwent surgery on November 17. He was discharged on December 2, 1972 with a "guarded prognosis" because of regional metastases. He was thereafter followed closely by the doctors and in April 1975 a liver scan suggested possible complication. In June 1975 an aspiration biopsy of the liver was positive for malignant melanoma, a fatal complication.
On learning of his imminently terminal condition Silverman consulted an attorney on June 27, 1975 to order his affairs. The attorney investigated the medical-legal implications of the failure to perform a biopsy following the initial excision on July 7, 1972 and filed this personal injury action on October 31, 1975. Silverman died of alleged metastatic melanoma on December 21, 1975. On February 24, 1976 the present plaintiff, Mrs. Silverman, filed an amended complaint substituting herself as plaintiff in her capacity as executrix and demanded damages for wrongful death as a result of defendant's alleged malpractice.
The foregoing facts were developed from oral testimony taken at the pretrial hearing on the motion to dismiss the survival action because of the bar of the statute of limitations. Such hearing is required by Lopez v. Swyer, 62 N.J. 267 (1973). The statute of limitations controlling the survival action, N.J.S.A. 2A:14-2, states:
Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.
Commencing with Fernandi v. Strully, 35 N.J. 434 (1961), our Supreme Court has recognized the so-called "discovery" *337 rule exception to a strict statute of limitations defense. The "discovery" rule is usually identified with medical malpractice actions, although not necessarily limited to them. New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419 (1968) (discovery rule applied to claim against engineers and land surveyors). The rule was best expressed in Lopez v. Swyer, where the Supreme Court said:
[A] cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim. [62 N.J. at 272]
The "discovery" rule originated in an action involving foreign objects left in the body. Fernandi v. Strully, supra. Its applicability has since expanded to "the generality of medical malpractice actions, including claims of improper treatment and diagnosis". Moran v. Napolitano, 71 N.J. 133, 139 (1976). The party invoking the rule has two years after the date of discovery to bring the action unless the defendant can establish that (1) the lapse of time between the expiration of two years after the actionable event and the date of institution of suit caused peculiar or unusual prejudice to the defendant, and (2) there was a reasonable time in which to bring the action between the time of discovery and the expiration of the initial two-year period. Fox v. Passaic General Hosp., 71 N.J. 122, 126-128 (1976). In Lopez v. Swyer, supra, our Supreme Court held that the statute of limitations issue ought generally to be resolved at a pretrial hearing by a judge without a jury. 62 N.J. at 272, 274-75. The burden of avoiding the bar of the statute rests upon the plaintiff. Id. at 276. The burden of proving prejudice is upon the party asserting it. Fox v. Passaic General Hosp., supra.
Until recently there had been some doubt concerning the precise nature and extent of knowledge on the part of the injured plaintiff which would suffice to trigger the bar of the statute. Compare Alfone v. Sarno, 139 N.J. Super. 518 *338 (App. Div. 1976), certif. den. 71 N.J. 498 (1976), with Rankin v. Sowinski, 119 N.J. Super. 393 (App. Div. 1972). Fortunately, such doubt has been substantially lessened by the Supreme Court's recent opinion in Burd v. New Jersey Tel. Co., 76 N.J. 284 (1978), decided more than a year after the trial judge's ruling in the present case.
Plaintiff's basic contention here is that the statute did not begin to run until the latter part of 1975 when Silverman first learned, after his consultation with counsel and his attorney's engagement of a forensic consultant, that he had a possible claim for malpractice based on defendant's failure to perform a biopsy in July 1972. This precise argument was rejected in Burd.
Plaintiff in Burd had sustained a heart attack in September 1971 while at work in an open trench gluing together pieces of plastic pipe. The glue contained an allegedly toxic gas known as THF. The suit against the supplier of the glue was filed in May 1974, well beyond the two-year statute of limitations. Invoking the discovery rule, plaintiff claimed that he first learned of a possible link between the glue and the heart attack in October 1972 during a conversation with his attorney. The trial judge in Burd ruled that plaintiff's action was not barred because he had neither actual nor constructive knowledge that he had a cause of action until he was so informed by his attorney. 76 N.J. at 290. The Supreme Court rejected this view stating:
We find the trial judge to have been in error in concluding that regardless of when a claimant knows or reasonably should know the facts of the relationship of his injury to a particular source or cause, the applicable limitations period does not begin running until he learns from a lawyer that those facts equate with a legal cause of action against the producer or originator of the injurious source or cause. It was not our intent [in Lopez v. Swyer, supra] to hold that a claimant's time to sue, for limitations purposes, does not begin to run until he knows or is advised by a lawyer that facts of which he does, or should, reasonably have knowledge, give rise to a legal cause of action against a particular defendant. The statute of limitations necessarily imputes conclusively to a claimant knowledge that the law affords or may afford a cause of action on the basis *339 of those facts of injury and causal relationship which in law do evoke a cause of action. In this regard it is of no consequence whether the cause of action arises in the field of products liability or any other aspect of tort law, or as to the degree of expertise which different lawyers possess in one such field or another. The discovery principle modifies the conventional limitations rule only to the extent of postponing the commencement of accrual of the cause of action until plaintiff learns, or reasonably should learn, the existence of that state of facts which may equate in law with a cause of action. There is no suggestion in any of the leading cases in this area that accrual of the cause of action is postponed until plaintiff learns or should learn the state of the law positing a right of recovery upon the facts already known to or reasonably knowable by the plaintiff.

* * * * * * * *
When the reported decisions speak in terms of the "discovery of the existence of the cause of action", e.g., Fox v. Passaic General Hospital, supra, 71 N.J. at 124, the intended meaning is precisely what we have articulated. That meaning was adumbrated by the formulation employed in both the Yerzy (Yerzy v. Levine, 57 N.J. 234) and Lopez cases, supra, i.e., the cause of action accrues when "the injured party discovers * * * that he may have a basis for an actionable claim" (emphasis added) 62 N.J. at 272. The basis mentioned, is, of course, constituted solely by the material facts of the case. [76 N.J. at 291-292; emphasis in original]
The trial judge in the present case correctly anticipated the decision of the Supreme Court in Burd. He concluded that all relevant facts were known to Silverman as of December 1972 and therefore the action filed on October 31, 1975 was out of time. Silverman was employed as Director of Research at the Merck Co. in Rahway and held a master's degree from Massachusetts Institute of Technology. The testimony clearly supports the trial judge's finding that by December 1972 he was well aware of all the implications of his condition and of defendant's possible medical dereliction in not obtaining a biopsy following the first excision in July 1972. By December 1972, following his radical surgery, defendant knew of his confirmed diagnosis of malignant melanoma with a Stage II, or regional, metastasis. The fact that the terminal metastasis to the liver was not medically confirmed until June 1975 did not defer the ripening of the *340 cause of action until that time. This fact of terminal metastasis to the liver goes to the extent of damages, not to the accrual of the cause of action for personal injury. Our courts have never held that total damages must be accrued and fixed before the cause of action arises. See Cappadona v. Eckelmann, 159 N.J. Super. 352, 358-359 (App. Div. 1978).
The only significant fact of which Silverman was not aware by December 1972 was that defendant's failure to order a biopsy of the first lesion excised may have constituted actionable negligence. Silverman did not acquire this knowledge until sometime after his attorney's forensic consultation in July 1975. Thus, Silverman's position was no different from that of plaintiff in Burd. Plaintiff here essentially contends that the statute does not start to run on a relatively sophisticated claim, e.g. malpractice or products liability, until the plaintiff receives sound legal or other expert advice about the merits of the claim. This thesis was rejected by the Supreme Court in Burd and must be rejected in this case. For the foregoing reasons the survivor's tort claim is barred by the statute of limitations.
We now consider the question of whether the time-bar of the personal injury-survival action operates also to bar the wrongful death action. Defendant's contention that the wrongful death action is barred is based on the allegedly dependent-derivative character of the action, a theory which we have rejected this day in Alfone v. Sarno, supra. The argument is based on an interpretation of the language of N.J.S.A. 2A:31-1 namely, "* * * such as would, if death had not ensued, have entitled the person injured to maintain an action for damages * * *," as a limitation precluding recovery for death where the injured person or his executor could not have recovered for personal injuries because of the bar of the statute of limitations.
Defendant's contention is indeed supported by Knabe v. Hudson Bus Transp. Co., 111 N.J.L. 333 (E. & A. 1933), a decision by the Court of Errors and Appeals, then this State's highest court. See also, Coulter v. New Jersey Pulverizing *341 Co., 11 N.J. Misc. 5, 163 A. 661 (Sup. Ct. 1932). In Knabe the deceased expired more than three years after he was injured by defendant's negligence. No personal injury action had been brought during his lifetime. The Court of Errors stated:
We agree that where any right of action by the living party was barred by limitation before his death, the Death Act ... does not create a right of action in the personal representative. [111 N.J.L. at 335].
This conclusion was reached despite the period of limitations specifically set forth in our Death Act which requires only that "[e]very action brought under this chapter be commenced within 2 years after the death of the decedent, and not thereafter." N.J.S.A. 2A:31-3. The Silverman death claim obviously meets this period of limitations. As we have pointed out in today's companion case of Alfone v. Sarno, 168 N.J. Super. at 315, we do not feel compelled to follow the judicial gloss superimposed upon the Wrongful Death Act by the Knabe-Coulter line of authority in view of the contrary dictum of a unanimous Supreme Court in Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 343-345 (1970). Justice Jacobs there stated that many out-of-state cases to the contrary were "persuasive" authority that the qualifying language of the Death Act "`relates to the character of the injury, without regard to the question of time of suit or death.'" Id. at 345, quoting Hoover's Adm's. v. Chesapeake & O. Ry. Co., 46 W. Va. 268, 33 S.E. 224 (Sup. Ct. 1899). See, also, similar language in Graf v. Taggert, 43 N.J. 303, 305-306 (1964), to the effect that N.J.S.A. 2A:31-1 was intended to bar recovery only where the decedent could not have recovered during his lifetime because of an absence of substantive liability. The gloss placed on the death action by the Knabe-Coulter line of authority is neither required by the language of the act, which has its own distinct and separate period of limitation, nor compelled by *342 any historical inexorability or overwhelming weight of authority elsewhere. We conclude that conditioning the cause of action for death on an extant and viable cause of action for personal injuries at the time of death is not required by the statutory language, logic, or credible precedent.
Prosser makes the following observations concerning the issue:
As to the defense of the statute of limitations, which is distinguishable only in that it does not involve the danger of double compensation, the considerable majority of the courts have held that the statute runs against the death action only from the date of death, even though at that time the decedent's own action would have been barred while he was living. Only a few courts hold that it runs from the time of the original injury, and consequently that the death action may be lost before it ever has accrued. [Prosser, Law of Torts (4 ed. 1971), § 127 at 912-913; footnotes omitted]
Cf. 2 Harper and James, The Law of Torts, § 24.7 at 1297-1298 (1956 & Supp.), which is ambivalent about the more desirable approach but stresses the policy of repose.
See, also, the conflicting authorities collected at 2 Speiser, Recovery for Wrongful Death (2 ed. 1975), § 11.17 at 192-196, which notes that the result we reach today is not without four-square precedent in New Jersey. Speiser cites Kotkin v. Caprio, 65 N.J. Super. 453 (App. Div. 1961), certif. den. 34 N.J. 470 (1961), as "intimating" support for the proposition that "although decedent fails to bring a personal injury action within the time set by statute, his personal representative is not barred from bringing suit for the death resulting from the injury." Speiser supra, at 194 n. 99. In Kotkin v. Caprio, supra, the accident in which claimant was injured occurred on May 2, 1957. She died six weeks later. The survival and death actions were not filed until May 29, 1959. Plaintiff conceded that the personal injury-survival action was time-barred. Since the death action was brought within two years of death in compliance with N.J.S.A. 2A:31-3 this court refused to dismiss the action as time-barred because no claim had been instituted *343 for personal injuries within two years of the accident, stating:
Under our statutes, when the injured person dies as a result of the accident while he still has a cause of action for his injuries, the cause of action for his injuries passes to his estate, while a new and separate cause of action, with its own statute of limitations, arises in favor of the beneficiaries named in the Death Act. [65 N.J. Super. at 458]
Ostensibly contra: Biglioli v. Durotest Corp., 44 N.J. Super. 93, 105 (App. Div. 1957), aff'd on other grounds 26 N.J. 33, 44 (1958); Redick v. Rohm & Haas Co., 97 N.J. Super. 58 (Law Div. 1967).
In this case we are not confronted with problems of double recovery. Only the policy of repose is potentially threatened by the result we reach. This result complies with the legislative directive that the action be "commenced within 2 years after the death of the decedent". N.J.S.A. 2A:31-3. We prefer to read no more of the policy of repose into the Wrongful Death Act than we perceive has been placed there by the Legislature. If we are wrong in concluding that the equities are in favor of allowing a recovery by the statutory beneficiaries in a truly separate and distinct action for damages rather than in assuring tortfeasors repose against an occasional death claim, the matter is rectifiable in the discretion of the Legislature.[1]
Affirmed.
NOTES
[1] A not too remote example of legislative response to judicial decisions which altered traditional concepts of repose and extended the length of time tortfeasors were exposed to liability is N.J.S.A. 2A:14-1.1; L. 1967, c. 59, § 1, effective May 18, 1967. This statute cuts off all claims against contractors, engineers and architects after ten years from the time of the furnishing of services, or the performance of construction irrespective of the date of injury. See Rosenberg v. North Bergen, 61 N.J. 190, 194-198 (1972); Brown v. Jersey Central Power & Light Co., 163 N.J. Super. 179, 193 (App. Div. 1978), certif. den. 79 N.J. 489 (1979).