168 N.J. Super. 315 (1979)
403 A.2d 9
ALPHONSE ALFONE, GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF CONCETTA ALFONE, DECEASED, PLAINTIFF-APPELLANT,
v.
ANTHONY SARNO, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1979.
Decided May 4, 1979.
*317 Before Judges CONFORD, PRESSLER and KING.
Mr. Clark E. Alpert argued the cause for appellant (Messrs. Blume, Kalb & Weisman, attorneys for appellant).
*318 Ms. Sharon T. Jacobson argued the cause for respondent (Messrs. Shanley & Fisher, attorneys for respondent).
The opinion of the court was delivered by KING, J.A.D.
This case presents the question of whether the representative plaintiff may sue on behalf of the surviving pecuniary beneficiaries of the deceased under our Wrongful Death Act, N.J.S.A. 2A:31-1 et seq., where the deceased during her lifetime had obtained a judgment in a personal injury action against defendant, which was ultimately satisfied, based upon the same negligent acts which allegedly caused the death. This precise question has never previously arisen in this jurisdiction.
This is the factual background. On September 8, 1968 plaintiff's decedent, Concetta Alfone, filed a complaint against defendant, Dr. Sarno, alleging negligent treatment with respect to two subtotal thyroidectomies performed on her in 1960 and 1965. At a trial conducted in November 1971 Concetta Alfone contended that the negligent surgical procedures performed by defendant caused damage to or removal of her parathyroid glands, resulting in hypocalcemia, a serious deficiency in the body's calcium supply which resulted in permanent residuals. The jury returned a verdict of $100,000 on the personal injury claim and judgment was entered thereon. Defendant appealed, and in an unreported opinion filed in May 1973 this court reversed on the ground that the trial judge erred in requiring defendant to bear the burden of proving that the action was barred by the two-year statute of limitations for personal injury claims. N.J.S.A. 2A:14-2. On remand the trial judge filed an opinion and entered judgment in March 1974 in favor of defendant on the statute of limitations question. On appeal this court in February 1976 reversed and entered judgment for plaintiff. Alfone v. Sarno, 139 N.J. Super. 518 (App. Div. 1976), certif. den. 71 N.J. 498 (1976).
On March 18, 1974 Concetta Alfone died intestate, survived by her parents and a teenage daughter. Following the *319 denial of certification in September 1976 defendant paid the judgment plus pre- and post-judgment interest, and a warrant in satisfaction executed in October by the administrator of her estate was filed as evidence thereof.
On March 11, 1976 Concetta's father, Alphonse Alfone, filed this action as administrator ad prosequendum, alleging her wrongful death as a result of the malpractice of defendant established in the prior action. Defendant filed a motion for summary judgment, contending that the successful prosecution of the personal injury action to a satisfied judgment barred an action under our Wrongful Death Act on the part of the alleged pecuniary beneficiaries, decedent's parents and child, where the cause of action for death was based on the same allegation of negligence as the personal injury action. The trial judge granted defendant's motion and plaintiff appeals.
Because of the possible pertinence of the allegations and proofs on the elements of damages at the trial of the personal injury action in 1971 to the potential damages recoverable on behalf of the alleged pecuniary beneficiaries in this action we have expanded the record on this appeal to include portions of the record of that trial. At the personal injury trial Concetta Alfone claimed damages for pain and suffering, temporary and permanent disability, and past and future medical expenses. Past medical expenses were stipulated at $24,000 to date of trial. Future medical expenses were in substantial dispute but could have been estimated at $30 to $40 a week. The standard jury charge on normal life expectancy was given  the jury was told that a woman of plaintiff's age, then 32, had a life expectancy of 44.1 years under the mortality tables appended to our court rules. Plaintiff's case was not presented on any serious contention of substantial foreshortening of her life from defendant's malpractice, either as a likely occurrence or in itself as a discrete element of damage. There was no evidence of any past lost earnings or of any loss of future earnings offered at the trial. Nor did plaintiff contend for the loss of any *320 future earning capacity as an element of damages by proof or in summation. The trial judge properly did not instruct the jury to consider any past or future economic loss to Concetta Alfone as part of its verdict, the proofs being barren as to those elements of damages.
The early common law allowed no action for the death of another, under the maxim actio personalis moritur cum persona.[1] The law changed in England with the passage of the first wrongful death statute in 1846, known as Lord Campbell's Act, 9 and 10 Vict., c. 93. New Jersey adopted a statute essentially similar to Lord Campbell's Act in 1848, Gen. Stat. p. 1188, §§ 10, 11. See Cooper v. Shore Electric Co., 63 N.J.L. 558, 562-563 (E. & A. 1899). Despite many amendments over the past 120 years, our act retains much of the flavor of Lord Campbell's Act. Most pertinent to the present inquiry, N.J.S.A. 2A:31-1 provides:
When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured * * *.[2] [Emphasis supplied]
*321 The question here is whether the cause of action is, in view of the emphasized language, totally derivative from the rights possessed by decedent as of the time of death or is independent of decedent's rights  a separate cause of action inhering in the beneficiaries. Defendant takes the first stated position, arguing from the literal language of the statute that since decedent could no longer have maintained another action once she recovered judgment in her original action, the mandate of the statute bars a subsequent wrongful death action.
Certain basic principles as to the law of damages under our Wrongful Death Act bear discussion at this point. The fundamental aim of our act is compensation for the pecuniary losses suffered by the survivors of those killed by wrongful acts. Tenore v. Nu Car Carriers, 67 N.J. 466, 473 (1975); N.J.S.A. 2A:31-4 and 5. The amount of recovery is based upon the contributions, reducible to monetary terms, which the decedent reasonably might have been expected to make to the survivors. Dubil v. Labate, 52 N.J. 255, 259 (1968). "This has been interpreted to mean the `deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased.'" McStay v. Przychocki, 7 N.J. 456, 460 (1951), quoting Carter v. West Jersey & Seashore R.R. Co., 76 N.J.L. 602 (E. & A. 1908). Damages are awarded only for pecuniary loss and do not include injury to the feelings, mental suffering or loss of society and companionship. Graf v. Taggert, 43 N.J. 303, 308-309 (1964) (see discussion at note 1 on the relatively limited scope of damages under the act). Cooper v. Shore Electric Co., supra, 63 N.J.L. at 567; Burd v. Vercruyssen, 142 N.J. Super. 344, 355-356 (App. Div. 1976), certif. den. 72 N.J. 459 (1976). Damages *322 may include the monetary value of loss of services, such as the economic worth of services of a deceased mother to her minor children, Carter v. West Jersey & Seashore R.R. Co., supra, 76 N.J.L. at 603, but such recovery "is solely for pecuniary loss * * * but it does not include loss of companionship and society as such." Russell v. Salem Transportation Co., Inc., 61 N.J. 502, 508 (1972). Economic dependency, however, is not the sole basis for damages for pecuniary loss; minor children may recover the pecuniary value of the loss of the care, guidance and advice of a parent during their minority. Suarez v. Berg, 117 N.J. Super. 456, 462 (App. Div. 1971).[3] Additionally, the statute permits an award of "the hospital, medical and funeral expenses incurred for the deceased." N.J.S.A. 2A:31-5.[4]
Our Wrongful Death Act carries its own period of limitations, requiring that suit be brought within two years of death. N.J.S.A. 2A:31-3. The action is brought in *323 the name of the deceased's representative, N.J.S.A. 2A:31-2, for the exclusive benefit of those entitled to take any intestate personal property of the decedent, with those actually dependent having priority. N.J.S.A. 2A:31-4. Our Supreme Court has stated that the act is remedial in nature and is to be liberally construed to effectuate its beneficent object, but because it is in derogation of the common law its remedies are not to be extended beyond their fair intendment. Turon v. J. & L. Construction Co., 8 N.J. 543, 558 (1952). The Wrongful Death Act is distinct from the so-called "survival action," N.J.S.A. 2A:15-3, which gives executors or administrators a right of action for tortious injury or damage to the deceased or his property incurred prior to death. N.J.S.A. 2A:15-3. In the usual case both actions are joined.
It is, therefore, clear that our Wrongful Death Act created a separate cause of action for the loss suffered by designated beneficiaries. That the act, like Lord Campbell's Act, created a new cause of action, distinct from the survival action, was most forcefully observed in Cooper v. Shore Electric Co., supra, 63 N.J.L. at 563-64, where the Court of Errors and Appeals in so concluding quoted from Lord Blackburn's observations while construing Lord Campbell's Act in the House of Lords in Seward v. Vera Cruz, 10 App. Cas. 59, 70-71 (1885), that it is "an action which is new in species, new in its quality, new in its principles, in every way new."
It is curious that a statute could be in existence for more than 120 years without a fundamental question such as is presented by this case having been answered by authoritative opinion. Our Supreme Court almost resolved the question in Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 343-45 (1970), and the Court of Appeals for the Third Circuit a year earlier resolved it adversely to a subsequent claim *324 on behalf of the surviving beneficiaries in Roberts v. Union Carbide, 415 F.2d 474 (1969).[5]
As noted above, the basic problem is to determine whether the death action is derivative from and dependent upon the existence of a viable cause of action in the deceased as of the time of death or whether it is independent thereof. The crucial language in the act is, "caused by a wrongful act * * * such as would, if death had not ensued, have entitled the person injured to maintain an action for damages." The issue can arise in three contexts: (1) before death the decedent obtained judgment against the defendant based on the same negligent act  the case before us; (2) before death the decedent settled a claim with the defendant based on the same negligent act, and (3) before death decedent's otherwise valid personal injury claim was barred by the expiration of the statute of limitations  an issue which we today decide in the companion case of Silverman v. Lathrop, 168 N.J. Super. 333 (App. Div. 1979).
The traditional majority view precluded an action for wrongful death in all three situations, though most of the decided cases are of older vintage. Annotation, "Release by, or judgment in favor of, person injured as barring action for his death," 39 A.L.R. 579 (1925); Prosser, op. cit., § 127 at 911; Speiser, op. cit., § 5:14 at 613-618, § 5:20 at 631-634. Older New Jersey authority supporting this traditional view is represented by Libera v. Whittaker, Clark & Daniels, Inc., 20 N.J. Super. 292 (Law Div. 1952), a case of a predeath settlement and release of the bodily injury claim, Knabe v. Hudson Bus Transp. Co., 111 N.J.L. 333 (E. & A. 1933) (our then highest court), and Coulter v. New Jersey Pulverizing, 11 N.J. Misc. 5, 163 A. 661 (Sup. Ct. *325 1932), both of the latter statute of limitation cases.[6] As noted, there are no New Jersey holdings on the prior judgment for bar, but there have been cases so holding elsewhere. E.g., Perry's Adm'r v. Louisville & N.R. Co., 199 Ky. 396, 251 S.W. 202 (Ct. App. 1923); Edwards v. Interstate Chemical Corp., 170 N.C. 551, 87 S.E. 635 (Sup. Ct. 1916).
The minority view, which permits a subsequent action, finds support in Rowe v. Richards, 35 S.D. 201, 151 N.W. 1001 (Sup. Ct. 1915), a settlement case, and Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), a judgment case involving a common law action for maritime wrongful death based upon the judicial remedy created by Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The five-justice Gaudet majority, in an opinion written by Justice Brennan, treats the entire subject extensively and upholds the right to maintain the death action. 414 U.S. 575-584, 94 S.Ct. 806. The dissenting opinion of Justice Powell presents the contrary position (id. at 602-604, 94 S.Ct. 806), stressing the policy against double recovery and the threat to repose as justification for precluding a second action. See also, Goodyear v. Davis, 114 Kan. 557, 220 P. 282 (Sup. Ct. 1923). Several respected academic authorities, to be discussed infra, also support the position of the Gaudet majority.
The continued validity in this jurisdiction of the derivative-dependent character of the cause of action is most questionable in light of dictum in the unanimous opinion of our Supreme Court in Lawlor v. Cloverleaf Memorial Park, Inc., supra, authored by Justice Jacobs. In Lawlor there was no need for the court squarely to choose between the derivative-dependent and the independent-separate theories because the filing of the survival action therein was held to relate back *326 under third-party practice, thereby escaping the bar of the two-year statute of limitations and preserving the otherwise timely-filed death action.
The Appellate Division in Lawlor felt controlled by the then still authoritative decision of the Court of Errors and Appeals (our highest court until 1948) in the Knabe case supra. The court said:
We recognize that there is a diversity of opinion and that all jurisdictions do not follow the construction of the Death Act which has been adopted by our courts. 2 Harper and James, Torts, § 24.7, pp. 1296-1297 (1956). In a number of states whose wrongful death act is patterned after Lord Campbell's Act, recovery has been permitted even though decedent had lost his right to sue. See Hoover v. Chesapeake and Ohio R. Co., 46 W. Va. 268, 33 S.E. 224 (Sup. Ct. 1899); DeHart v. Ohio Fuel Gas Co., 84 Ohio App. 62, 85 N.E.2d 586 (Ct. App. 1948); Annotation, 167 A.L.R. 894, 901-903 (1947). However, until the cited pronouncements of our courts are overruled by our highest court, we consider ourselves bound by them. [106 N.J. Super. 374 at 392-393]
This statement by the Appellate Division sparked the following discussion by the Supreme Court in Lawlor:
Since the Appellate Division entertained the view that the action under the Survival Act had been barred by limitation, it felt obliged by the New Jersey precedents to hold that the Wrongful Death action under N.J.S.A. 2A:31-1 was also barred by limitation. 106 N.J. Super. at 390-93; Knabe v. Hudson Bus Transportation Co., 111 N.J.L. 333, 335 (E. & A. 1933); Coulter v. New Jersey Pulverizing Co., 11 N.J. Misc. 5 (Sup. Ct. 1932). In reaching this conclusion the cited cases, while recognizing generally that the Wrongful Death proceeding is a separate and distinct cause of action subject to N.J.S.A. 2A:31-3 which provides that the action "shall be commenced within 2 years after the death of the decedent," placed primary stress on the following italicized language in N.J.S.A. 2A:31-1:
When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person *327 injured and although the death was caused under circumstances amounting in law to a crime. (Italics ours).
In Coulter the former Supreme Court held that where the decedent did not institute any action within the two-year period and died thereafter, his representative was barred by limitation; Justice Bodine expressed the thought that the statute gave "an action if the decedent had one" and since the decedent had lost his right of action by "lapse of time" his representative had none. 11 N.J. Misc. at 6-7. In Knabe, Justice Parker, speaking for the Court of Errors and Appeals, subscribed to the holding in Coulter, saying: "We agree that, where any right of action by the living party injured was barred by limitation before his death, the Death Act does not create a right of action in the personal representative." 111 N.J.L. at 335.
Although there are supporting out-of-state cases there are many to the contrary. 106 N.J. Super. at 392-93; N.O. Nelson Mfg. Corp. v. Dickson, 114 Ind. App. 668, 53 N.E.2d 640 (1949); McKee v. New Idea, Inc., 36 Ohio Law Abs. 563, 44 N.E.2d 697, 717 (Ohio Ct. App. 1942); Causey v. Seaboard Air Line R. Co., 166 N.C. 5, 81 S.E. 917 (1914); German-American Trust Co. v. Lafayette Box, Board & Paper Co., 52 Ind. App. 211, 98 N.E. 874 (1912).
These cases take the persuasive position that the statutory terminology "relates to the character of the injury, without regard to the question of time of suit or death." Hoover's Adms. v. Chesapeake & O. Ry. Co., 46 W. Va. 268, 33 S.E. 224 (1899). Much the same approach might be gathered from this Court's statement in Graf v. Taggert, 43 N.J. 303, 305-06 (1964), that the italicized language in N.J.S.A. 2A:31-1 was "intended to preclude recovery where the injured person could not have recovered because the defendant did not commit a wrongful act or the deceased's own conduct would have barred his right to recover."
In light of our holding in the instant matter that the survival action was not barred by limitation, we need not pursue further the issue presented by the aforecited conflicting decisions; there is no dispute that where, as here, the survival action was not barred by limitation, the later death action, instituted well within 2 years after the death (N.J.S.A. 2A:31-3), was also not barred. [56 N.J. 343-345]
The Supreme Court's reference to the "persuasive position" of the many out-of-state cases, contrary to the Knabe view, which hold that "the statutory terminology `relates to the character of the injury, without regard to the question of time of suit or death,'" though dictum, convinces us that Knabe *328 has been discredited and would not now be followed by the Supreme Court. We therefore accept the view that the statutory terminology means nothing more than that where a person has been injured by a tortious act which later causes his death, the beneficiaries under the wrongful death act have a separate and independent right of action, qualified only by the strong policy against the recovery of duplicate damages. As we have recently stated, "[w]here more recent decisions of the Supreme Court plainly undermine the authority of a prior decision although not squarely and explicitly overruling it, we are entitled to follow the current doctrine and need not be confined by the prior ruling." State v. Ciuffini, 164 N.J. Super. 145, 152 (App. Div. 1978); see also State v. Chiarello, 69 N.J. Super. 479, 498 (App. Div. 1961), certif. den. 36 N.J. 301 (1962).
We note with interest the comment of Judge Gibbons of the Third Circuit in Goodman v. Mead Johnson & Co., 534 F.2d 566, 569-70 (1976), cert. den. 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1976), to the effect that the New Jersey courts have recognized that the beneficiary's claim under the Wrongful Death Act is an independent cause of action and "not a derivative of the decedent's personal injury claim," but that they have "placed a gloss on the literal language" of the Death Act "inextricably linking the two." Judge Gibbons, we think, perceptively and correctly observed that the dictum in the Supreme Court's opinion in Lawlor, quoted supra, suggests that "the gloss heretofore placed by the courts on [the Death Act] is not supported by the statutory language". 534 F.2d at 570, n. 7.
The traditional view barring an independent recovery has long had its detractors. In 1915 the Supreme Court of South Dakota stated in Rowe v. Richards, supra, a settlement-type case:
We must confess our inability to grasp the logic of any course of so-called reasoning through which the conclusion is drawn that the husband simply because he may live to suffer from a physical injury and thus become vested with a cause of action for the violation of *329 his own personal right, had an implied power to release a cause of action  one which has not then accrued; one which may never accrue; and one which from its very nature cannot accrue until his death; and one which, if it ever does accrue, will accrue in favor of his wife and be based solely upon a violation of a right vested solely in the wife.
[35 S.D. at 215-216, 151 N.W. at 1006]
In Gaudet Justice Brennan describes this as a classic summary of the view that the cause of action for death is independent of the personal injury action. Sea-Land Services v. Gaudet, 414 U.S. at 582, n. 8, 94 S.Ct. 806. See also, Brown v. Moore, 247 F.2d 711, 722 (3 Cir.1957), cert. den. 355 U.S. 882, 78 S.Ct. 148, 22 L.Ed.2d 112 (1957) (applying Pennsylvania law); Phillips v. Community Traction Co., 46 Ohio App. 483, 189 N.E. 444 (App. Ct. 1933). This point of view emphasizes the conception that the survivors' rights accrue only at the death of the victim. As noted by Speiser,
The theory of such cases is that the cause of action for death does not arise until decedent's death, that it should be unaffected by acts of the injured person during his lifetime, and that decedent could not have disposed of the right before it arose. [Speiser, op. cit., § 5:14 at 615]
In referring to the crucial language  "such as would, if death had not ensued, entitled the person injured to maintain an action"  Prosser says:
* * * It obviously is intended at least to prevent recovery for death where the decedent could never at any time have maintained an action, as, for example, where there was simply no tortious conduct toward him.

* * * * * * * *
It is not at all clear, however, that such provisions of the death acts ever were intended to prevent recovery where the deceased once had a cause of action, but it has terminated before his death. The more reasonable interpretation would seem to be that they are directed at the necessity of some original tort on the part of the defendant under the circumstances giving rise to liability in the first instance, rather than to subsequent changes in the situation affecting only the interest of the decedent. [Prosser, op. cit. § 127 at 910-911; footnotes omitted]
*330 The author then discusses the factors which have shaped the majority (derivative) and minority (independent) views. The principle influence appears to have been the "fear of a double recovery" where the decedent has recovered his prospective earnings, either for a diminished or normal life expectancy, in the personal injury action. Id. at 911, n. 33, n. 34. A countervailing factor is the possibility of "an improvident settlement by an optimistic individual, confident that he is not going to die, which takes no account of shortened life expectancy, or of the interests of survivors." Id. at 912. As the author notes, "no satisfactory systematic solution to the whole problem has been found." Ibid.
Harper and James, op. cit., § 24.6 at 1293-1294, perhaps best pinpoints the real nature of the dispute between the contending camps with respect to the defense of former recovery or release by the deceased when it observes:
The vital policy behind both of these defenses is certainly in part the prevention of double recovery. The inquiry is invited, therefore, whether there is serious danger of double recovery. Some have argued that there is no such danger, pointing to the fact that a survival act and a wrongful death act redress different injuries and do not (if carefully drawn) overlap. Many states, the argument continues, allow recovery under both types of statutes after the deceased's death on the very ground that this involves no double recovery. Since the survival statute merely continues the deceased's own action, the argument concludes, there is no greater danger of double recovery if the wrongful death action is allowed in spite of former recovery by the deceased upon his own claim before his death. This argument overlooks one vital consideration. After deceased's death, damages under a survival statute are limited to those on account of the period between his injury and death  a period that has become defined by the event of death itself. If, on the other hand, deceased recovers before his death, his recovery for permanent injuries will be based, under the prevailing American rule, on his prospective earnings for the balance of his life expectancy at the time of his injury undiminished by any shortening of that expectancy as a result of the injury. Presumably any settlement would reflect the legal liability under this rule. The danger of double recovery becomes clear when it is recalled that any benefits of which the survivors were deprived, by the death, would have come out of these very prospective earnings if deceased had lived. At least in the *331 case of serious and apparently permanent injuries, therefore, there is real danger of double recovery if a wrongful death action is allowed after a recovery or release by deceased during his lifetime. [Emphasis in original]
We conclude that an approach crafted to avoid double recovery as to any particular item of damages is fairest to all and would in large measure satisfy those who object to the minority approach. Such an approach is articulated by the Restatement, Judgments 2d, § 92.1 (2) (b) (Tentative Draft. No. 3, 1976), as follows:
If a wrongful death action is permitted even though the decedent had obtained a judgment for his personal injuries, the judgment precludes recovery of damages in the wrongful death action for such elements of loss as could have been recovered by decedent in his action.
The Comments to § 92.1 report that the "authorities dealing with the question are in profound conflict." The reporter says that "the distinct majority of jurisdictions" support the view that the death action is "derivative" and maintainable only if decedent had a claim at death. Id. at 53. But he notes that in "a substantial minority of states" the death statute has been construed as creating an independent cause of action. Id. at 54. It is observed that where the authorities permit an independent action "double recovery is not permitted. In some jurisdictions this is done by defining the measure of recovery in the respective actions in mutually exclusive terms. In others, where the measure of damages overlap, the beneficiaries are precluded from seeking items of damage recoverable by the decedent in his action". The Reporter's Note to the Tentative Draft includes the following comments:
The jurisdictions that permit a subsequent action by the beneficiaries are a minority but perhaps a growing one, particularly given the potential influence of Gaudet v. Sea-Land Services, Inc., supra. Of these jurisdictions, the only authorities supporting the proposition that the death action beneficiaries can sue even though the decedent lost his personal injury action seem to be DeHart v. *332 Ohio Fuel Gas Co., 80 Ohio App. 62, 85 N.E.2d 586 (1948), and Kaiser Foundation Hospital v. Superior Court, 254 Cal. App.2d 327, 62 Cal. Rptr. 330 (1967), the latter being inconsistent with Secrest v. Pac. Elec RR., 60 Cal. App.2d 746, 141 P.2d 747 (1943). The more widely held view in the jurisdictions that allow the subsequent action is that the beneficiaries of the wrongful death action have what amounts to a claim for supplemental damages following a judgment in favor of the decedent. See Gaudet v. Sea-Land Services, Inc., supra, and authorities cited therein. That is the view adopted in subsection (2) (b) of this Section. [Id. at 57]
We are not confronted in either this case, or in the companion case which we decide today, Silverman v. Lathrop, supra, with the specter of a double recovery. The damages sought and recovered by Concetta Alfone for her personal injuries will not overlap the damages recoverable by her surviving parents and daughter. Concetta recovered for her pain, suffering and disability, past and future, as well as her incurred and projected medical expenses. She made no claim for future lost earnings  the real wellspring of potential double damage claims. Her survivors under our law may recover in this action for funeral and burial expenses and the pecuniary value of any lost services to them, including the deprivation to the daughter of her mother's care, nurture and guidance during minority.
It will be time enough to deal with the precise mechanics of preventing a double recovery either in a judgment or settlement situation when an appropriate case comes before us. For examples of authorities dealing with the problem, see Justice Brennan's majority opinion in Sea-Land Services v. Gaudet, supra, 414 U.S. at 592, 94 S.Ct. 806 (collateral estoppel approach); Gaudet v. Sea-Land Services, 463 F.2d 1331, 1333, n. 1 (5 Cir.1962), aff'd 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (appropriate deduction approach); Breen v. Peck, 28 N.J. 351, 357 (1948); Knutsen v. Brown, 96 N.J. Super. 229 (App. Div. 1967); Ciluffo v. Middlesex General Hosp., 146 N.J. Super. 476, 482 (App. Div. 1977) (all successive tortfeasor damage cases); see also, Restatement, *333 Judgments 2d, supra, § 92.1 at 57-58, where the Reporter discusses the duplicate damage problem.
Reversed.
NOTES
[1] An exhaustive treatment of the subject can be found at 1 Speiser, Recovery for Wrongful Death (2 ed. 1975), §§ 1:1-1:9 at 2-30 (hereafter Spieser). For a more concise narrative, see Prosser, Law of Torts (4 ed. 1971), §§ 126-127 at 898-902 (hereafter Prosser). And see 2 Harper & James, The Law of Torts, §§ 24.1-24.3 at 1284-1289 (1956) (hereafter Harper & James).
[2] This may be compared to the original language of Lord Campbell's Act which provided in part:

That whensoever the Death of a person shall be caused by wrongful Act, Neglect, or Default, and the Act, Neglect, or Default is such as would (if Death had not ensued) have entitled the Party injured to maintain an Action and recover damages in respect thereof, then * * * the Person who would have been liable if Death had not ensued shall be liable to an Action for Damages, notwithstanding the Death of the Person injured * * *. [As quoted in Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 579, 94 S.Ct. 806, 812, 39 L.Ed.2d 9 (1974)]
[3] The standard charge recommended by our Supreme Court's Committee on Model Jury Charges, Civil, reads in pertinent part as follows:

If plaintiff is entitled to recover damages in this case you must limit your consideration to the financial loss suffered by the survivors, measured by what they would have received from the decedent according to reasonable probabilities if the decedent had continued to live. Pecuniary injuries or money losses do not include injuries to the survivors such as emotional distress, anguish, grief and sorrow, or the loss of the society and companionship of the decedent. Such feelings, though real and distressing, cannot be taken into consideration in determining the extent of the financial or pecuniary loss suffered by the survivors. However, financial loss does include not only actual monies which would have been contributed to or expended for the benefit of a survivor, but also includes the reasonable value of benefits which would have been received by a survivor from the decedent in the nature of services and assistance (as well as training and guidance to a child) if decedent had continued to live.
[4] Cf. N.J.S.A. 2A:15-3, which alternatively allows an executor or administrator to recover funeral and burial expenses in a survival action.
[5] Not only was the Third Circuit without the benefit of the discussion of the problem by our Supreme Court in the Lawlor case, supra, but the opinion makes the point that the record failed to indicate elements of recoverable damage in the later action not covered by the earlier suit of the decedent. 415 F.2d at 475.
[6] For an apparently contra holding by this court in a statute of limitations case see Kotkin v. Caprio, 65 N.J. Super. 453 (App. Div. 1961), certif. den. 34 N.J. 470 (1961).