[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
This case involves a claim of dental malpractice. The defendant has filed a motion for summary judgment based on a CT Page 5252-UU claim that the suit is barred by the running of the applicable statute of limitations. The defendant has filed a certified copy of the plaintiff's deposition to support his motion. The plaintiff has submitted an affidavit. Reading the briefs filed by the parties it does not appear and the plaintiff does not point to any disputed issues of fact. Pleadings or a deposition of a party can be viewed as an admission and for that purpose be relied upon by the moving party in a motion for summary judgment. There is nothing in the plaintiff's affidavit that rebuts or contradicts the deposition testimony that the defendant relies upon. At the most the deposition can be said to expand upon or elucidate portions of the affidavit. An affidavit of this type cannot be said to raise a material issue of fact since if that were allowed to be the case admissions could not be effectively relied upon in summary judgment procedure although there is no articulable reason not to rely on them.
Interestingly in a leading medical malpractice case Burns v.Hartford Hospital, 192 Conn. 451 (1984) the court upheld the trial court's granting of a motion for summary judgment based upon a finding by the trial court that the claim was barred by the statute; of limitations. The Supreme Court noted that the defendant hospital "supported its motion for summary judgment with excerpts from a sworn deposition of Barbara Burns" (the mother of the injured infant), id. p. 456. Certainly then a trial court can rely on a certified deposition containing admissions in ruling on a case such as this.
The standards to be applied in ruling on motions for summary judgment are well-known. The court must determine if there is a genuine issue of material fact. If there is it cannot be decided by the court, because the non-moving party has a constitutional right to a jury trial. The standard to be applied is that used by the court in deciding whether a motion for a directed verdict should be granted.
FACTS
The court will discuss the facts and evidence before it on this motion to outline the context of the issues presented. Other pertinent facts will also be referred to in more detail in the decision as specific legal problems are discussed.
The plaintiff went to the defendant for the purpose of having his teeth cleaned. He was told by the defendant that he had to CT Page 5252-VV have his wisdom teeth removed. In his affidavit the plaintiff states he was not told about the risks of such a procedure nor did the defendant suggest any alternative treatments. The extraction occurred on October 25, 1991, a Friday. A party's pleadings are certainly admissions and paragraphs 10 and 11 of the first count of the Third Amended Complaint state the following:
 "10. During the procedure, Mr. Raso saw the Defendant's arm and/or hand slip while he was drilling in the area of Mr. Raso's lower right jaw bone.
 11. After the procedure was completed, Plaintiff, Michael Raso, left the Defendant's office complaining of numbness."
The plaintiff's affidavit states that after the extraction he experienced "continuing numbness in (his) tongue and change in taste." He called the defendant and returned to his office on October 28 or 29, 1996 (complaint says 29th, affidavit 28th) three or four days after the extraction. He told the defendant about the numbness but was assured that he would get feeling back in a few weeks.
At his deposition the plaintiff indicated his parents had talked to a dentist friend of theirs whom they contacted "to ask him what possibly could have happened." The plaintiff said this dentist "had implied mat, in some way, a nerve may have been damaged or bruised." His mother communicated this information to the plaintiff during the course of the first weekend after the extraction which as noted occurred on a Friday, October 25, 1991. (Dep. p. 67.) At page 69 of his deposition the plaintiff went on to answer affirmatively to a question which asked him whether during that first weekend because of the numbness he knew that he "had suffered some kind of problem, as a result of the extractions, that Dr. Levine had failed to warn" him about. (Dep. p. 69.)
In his affidavit the plaintiff then says at his parents' urging he went to see a neurologist, Dr. Haak, on November 5, 1991. The following is then set forth:
 "20. Dr. Haak implied that what had probably happened was my lingual nerve had been injured or severed. CT Page 5252-WW
 21. Dr. Haak did not tell me that Dr. Levine (the defendant) was negligent or committed malpractice in extracting my wisdom teeth."
The plaintiff's pleadings and deposition are somewhat more enlightening on this visit to Dr. Haak and what information the plaintiff garnered from it. Paragraph 15 of the First Count states that on November 5, 1991 the plaintiff "was examined by Bruce B. Haak, M.D., a neurologist in New Haven. Dr. Haak's assessment was `post traumatic right lingual neuropath.'" Paragraph 16 states the plaintiff returned to Dr. Haak on November 20, 1991 "and no improvement was found."
The plaintiff's deposition testimony talked about the Haak consultation. At page 83 the following occurs:
 "Q. As of November 5 of 1991, as of your meeting with Dr. Haak, you knew that you had suffered an injury to the lingual nerve, or most likely had suffered an injury to the lingual nerve, and that was something that you had not been warned of before the procedure?
A. Correct.
 Q. It was your understanding, as of that date, that the lingual nerve injury was something that happened as a result of the extractions?
A. Correct."
In his affidavit the plaintiff sets forth other facts that can be considered by the court. He states on December 5, 1991 he saw a Dr. Donoff, the dean of Harvard Dental School, who told him his nerve had been damaged or severed and that the doctor said he could perform reconstruction surgery and had a good success rate with such surgery. Dr. Donoff did not tell the plaintiff the defendant was negligent or had committed malpractice in extracting his teeth. Dr. Donoff performed the surgery in January 1992. The doctor said he thought the surgery was successful because he felt he had been able to rejoin the two ends of the severed nerve. The plaintiff saw Dr. Donoff for follow up visits for the next ten months to a year up until the beginning of January 1993. At that visit Dr. Donoff said the surgery had not worked and that there was nothing further he could do. The affidavit concludes by saying that from the date of the CT Page 5252-XX extraction to early November 1992 his sole concern was regaining sensation and taste in his tongue. On October 15, 1992 he was examined by a Dr. Pearlman and read a letter dated by him November 3, 1992 some time early in that month. The plaintiff states it was only when he read Dr. Pearlman's report did he realize Dr. Levine was negligent. In that report Dr. Pearlman indicated that the defendant failed to take proper x-rays before the extraction; if he had, the defendant would have seen that the plaintiff's lower right wisdom tooth was impacted and obstructed by the jaw bone.
The defendant claims that based on the undisputed facts the plaintiff's claims of lack of informed consent and negligence are barred by § 52-584 of the General Statutes since he did not bring suit within two years from the date he knew of his injury. Section 52-584 reads in relevant part as follows:
 "No action to recover damages for injury to the person . . . caused by negligence, or by reckless or wanton misconduct or by malpractice of a physician . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no action may be brought more than three years form the date of the act or omission complained of. . . ."
Section 52-584 "requires that the injured party bring suit within two years of discovering the injury. . . . In this context injury occurs when a party suffers some form of `actionable harm.'" Burns v. Hartford Hospital, 192 Conn. 451, 460 (1984). What does "actionable harm" mean — that is the question. The court in Catz v. Rubenstein, 201 Conn. 39, 47 (1986), referred to case law in other jurisdictions in defining the meaning of our statute. It noted that: "Other jurisdictions have also held that a plaintiff must have discovered the essential elements of a possible cause of action before the statute of limitations commences to run." The court quotes from Brown v. Mary HitchcockMemorial Hospital, 378 A.2d 1138, 1140 (NH 1977). "A cause of action will not accrue until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that this injury may have been caused by the defendant's wrongful conduct." (Emphasis in original.) Mere awareness of the injury is not enough. The court in Brown goes on to elucidate its position further pages 1140-1141 CT Page 5252-YY when it says: ". . . the applicable statutes of limitation in this case did not begin to run until the plaintiffs knew or reasonably should have known of the defendants' negligence." TheCatz court also quotes language to the same effect from Mastro v.Brodie, 682 P.2d 1162, 1168 (Colo., 1984), which concludes with the following observation: "The focus is on the plaintiff's knowledge of the facts, rather than on the discovery of applicable legal theories" This only means that the question is not when the plaintiff articulated or was told of specific legal theories or possible causes of action, the question is whether the plaintiff had sufficient facts, including of course the fact of injury to put him or her on notice that the injury was caused by another's wrongful conduct.
Burns v. Hartford Hospital, supra, and Barnes v. Schlein,192 Conn. 732 (1984), are leading cases on the issue of the running of the statute of limitations under § 52-584 in medical malpractice cases. Catz at 201 Conn. page 45 in commenting on these cases, held that in both cases the statute ran from a certain date because on that date the plaintiff "was aware of thecausal connection between the defendant's negligence and herinjury and thus knew that she had suffered `some form of actionable harm.'" (Emphasis added.)
Applying these rules to the facts of this case there is no question that the plaintiff knew of his injury from the point he left the defendant's office or at the least that weekend in October of 1991.
The determinative issue thus becomes did the plaintiff perceive or was he aware of the defendant's negligence or wrongful conduct and the causal connection between such conduct and the injury he knew he had suffered. The test is certainly not when or whether the plaintiff was told by an expert that the defendant doctor was negligent or committed malpractice because, as the court said in Barnes v. Schlein, "Although an expert opinion may lead to the discovery of an `actionable harm'. . .; it does not follow that a plaintiff cannot reasonably discover an injury absent verification by a qualified expert." 182 Conn. at page 738, footnote 7; Cf., Silverman v. Lathrop, 403 A.2d 18, 21-22 (NJ, 1979).
In this case in his own pleadings the plaintiff said that during the extraction procedure he saw the defendant's arm slip while the defendant was drilling in the area of the plaintiff's CT Page 5252-ZZ lower right jaw bone. The plaintiff had an appointment with Dr. Haak a little less than two weeks after the extraction because of the numbness he continued to feel in his tongue from the moment he left the defendant's office. He indicated in his deposition that he told Dr. Haak:
 "That I had recently had my wisdom teeth removed, and I explained to him that the doctor had slipped when he was drilling, and at that time, my body went into a convulsion." (Dep. p. 79.)
Dr. Haak pulled out a medical book showing a diagram of the mouth and nerves which give feeling and taste sensation to the tongue. At first Haak did not know what he thought was wrong then the plaintiff said that "he implied to me that probably what had happened was that the lingual nerve has been injured or severed." (Dep. p. 80.) In the pleadings the plaintiff alleges that "Dr. Haak's assessment was `post traumatic right, lingual neuropathy.'" (First Count, para. 15 of Third Amended Complaint.) In paragraph 21 the plaintiff alleges that exploratory surgery by Dr. Donoff "revealed that the Defendant had severed (the plaintiff's) lower lingual nerve while extracting the lower right impacted and infected wisdom tooth."
By the admissions made in this complaint and deposition the plaintiff knew of the injury he had suffered and as a reasonably diligent person had discovered or should have discovered that the injury was causally connected to the negligent or wrongful actions of the defendant by November 5, 1991 and certainly by the date of Dr. Donoff's exploratory surgery in January of 1992. Suit had to have been brought within two years of either one of those dates, depending on which was the appropriate date. But suit was not brought here until October of 1994, well over two years from either the November 5, 1991 date or the January 21, 1992 date when Dr. Donoff did his exploratory surgery. Thus it would appear that the defendant is entitled to prevail on his motion for summary judgment and the plaintiff's objection to the contrary is not persuasive. The plaintiff argues genuine issues of material fact existing between the parties preclude the granting of this motion. But it cannot be said that the affidavit submitted by the plaintiff raises a material and genuine issue of fact. It is a skillfully drawn document but it does not so much contradict the admissions made in the complaint and deposition as fail to mention; them at all. Thus the affidavit makes no mention of the fact that the plaintiff noticed the defendant's arm slip during CT Page 5252-AAA the procedure. It does not refer to the fact that he had told Dr. Haak about this prior to Dr. Haak telling him that the lingual nerve had been injured or severed.
At the end of the affidavit the report of Dr. Pearlman is mentioned. It states the plaintiff only realized the defendant was negligent upon reading that report. The last paragraph states the plaintiff "learned for the first time" that the defendant failed to take proper x-rays.
But in paragraph 23 of the revised complaint, failure to take proper x-rays is only one of the allegations of negligence along with failure to refer the plaintiff to a specialist but another allegation — the operative cause of the injury — is stated as follows: the defendant was negligently responsible for dental malpractice by "negligently and carelessly slipping with the drill, thereby severing Mr. Raso's lower right lingual nerve during surgery." Paragraphs 15 and 21 make clear as noted that the injury or severance of this lingual nerve caused the very injury the plaintiff complains of by this suit. The problem remains that the plaintiff knew of the damage such trauma to the lingual nerve caused in October 1991 and knew of the wrongful conduct that caused this damage by at least November 5, 1991 or January 21, 1992. As of those dates "actionable harm" had occurred. The fact that the plaintiff as of those dates was not aware that another specification of negligence could be made as a result of the defendant's conduct — here failure to take x-rays — should not toll the statute. This is a necessary corollary of the court's statement in Burns v. Hartford Hospital that "an injury occurs when a party suffers some form of actionable harm. The harm need not have reached its fullest manifestation before the statute begins to run." 192 Conn. at p. 460.
As said in a case cited in Catz v. Rubenstein, supra,201 Conn. at p. 47:
 "However, in order for the bar of the statute of limitations to be applicable it is not necessary to prove the plaintiff knew the specific negligence of the defendant nor that he knew the details of the evidence by which to prove the cause of action. It is enough that he knew or may be reasonably charged with knowledge of sufficient facts to be aware he had a cause of action more than two years before it was brought." Baines v. Blenderman, 223 N.W.2d 199, 202 (la., 1974.) CT Page 5252-BBB
The plaintiff has raised several other specific objections to the granting of this motion which the court does not find persuasive.
He notes that the defendant told him a few days after the surgery that feeling would return in a few weeks. The fact that the doctor gives reassurances to the patient is certainly a factor to be considered on the question of due diligence in discovering actionable harm. C.f. Mastro v. Brodie,682 P.2d at p. 1162. Here, however, relying on these reassurances cannot forestall a finding that the plaintiff should have been reasonably aware of actionable harm on a date that would bar suit. The visit with and information he learned from Haak, and if not this, the information he learned or should have learned as a result of Dr. Donoff's exploratory surgery, were intervening factors that preclude a conclusion that the plaintiff should not have understood there was actionable harm. The exploratory surgery occurred approximately twelve weeks after the extraction, more than the "few weeks" the defendant postulated for complete recovery and thus long beyond the time when reliance on the defendant's predictions could be said to be reasonable. Also from Dr. Haak's explanation and reference to the nerves in the jaw area and Donoff's discovery of a severed lingual nerve, there could be no reasonable reliance on the defendant's reassurances given three days after the extraction in any event.
Further, the plaintiff notes that he was not told until November 4, 1992 that there was little or no hope for his recovery. But as noted from the last reference to Burns, the plaintiff knew long before then of the defendant's wrongful or negligent conduct and that this had caused him injury. A harm need not reach its fullest manifestation before the statute starts to run, 192 Conn. at p. 460. In other words, the plaintiff cannot claim the statute is somehow tolled until he finds out whether any injuries he has received are permanent.
The plaintiff then argues that he is not an expert and thus was unable to discover "within any degree of certainty on his own, the nature, extent or cause of (his) injuries until he was examined and diagnosed by an expert." (Page 4 of 3/19/96 brief.) The plaintiff refers to § 52-180a and the requirement that there must be a Certificate of Good Faith in the pleadings in which a health care provider certifies in good faith there is evidence of malpractice. Yale Univ. Sch. of Medicine v. McCarthy,
CT Page 5252-CCC26 Conn. App. 497 (1991). But the fact that the legislature has determined that as to medical malpractice claims the machinery of the courts should not be put into operation until a Certificate of Good Faith is procured should be viewed as a measure designed to forestall the filing of unfounded claims and to ensure suits are filed in good faith. This has nothing to do with the separate question of when a party, knowing of his or her injury and knowing or having reason to know it was caused by a medical practitioner, should have to file suit in relation to the date of that acquired knowledge in order that his or her claim will not be barred by the statute of limitations. See above reference toSilverman v. Lathrop, supra, and footnote 7 in Barnes v. Schlein,
supra.
The plaintiff cites Keans v. Bottiarelli, 35 Conn. App. 239
(1994) for the proposition that to prevail in a medical malpractice action a plaintiff must prove that a defendant deviated from a certain standard of care and an expert is needed to show that standard and the deviation from the standard. C.f.,Campbell v. Palmer, 20 Conn. App. 544, 548 (1990). But the standard of proof necessary to prevail at trial and the garnering of sufficient expert testimony to meet that standard has nothing to do with the policies behind the statute of limitations.
In a case cited in Mastro v. Brodie, supra, an Oregon court makes the following observation:
 "To start the running of the statute of limitations, a plaintiff need not have knowledge of facts that, if proved, would convince every reasonable fact-finder that plaintiff should win. It is sufficient that a plaintiff have knowledge, actual or implied, of facts, that if proved, will at least raise an issue of fact on each element of the claim." Duncan v. Augter, 661 P.2d 83, 86 (Or., 1983.)
The point is that when a person learns his or her injury is an "actionable harm" brought about by a doctor or dentist, whether he or she learns that from experts and/or his own observations, then that person must take steps from that point in order to be able to bring suit within the statutory time period and that would include taking sufficient steps to file suit with an appropriate Certificate of Good Faith as required by §52-180(a). CT Page 5252-DDD
A California case cited in Mastro v. Brodie, supra, and our case, Catz v. Rubenstein, supra, sets forth well the applicable law on this question.
 "The test is whether the plaintiff has information or circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation. . . . If plaintiff believes because of injuries she has suffered that someone has done something wrong, such a fact is sufficient to alert a plaintiff `to the necessity for investigation and pursuit of her remedies.'" Graham v. Hansen, 180 Cal.Rptr. 604, 609 (1982).
Here the plaintiff knew of injury and by November 5, 1991, the date of the consultation with Dr. Haak, he knew the defendant had done something wrong or he was put on reasonable inquiry that the defendant had done something wrong, and he knew of the causal connection between the latter and the former. He knew these things then and he certainly knew them by January 21, 1992 when Dr. Donoff did his exploratory surgery.
There really is no genuine issue of material fact here, no facts are really disputed. The only question is the legal standard to be applied to those facts. Here the cause of action can be said to have accrued on either November 5, 1991 or at the latest on January 21, 1992; those are the dates by which the plaintiff discovered or should have discovered the negligent act of the defendant, the injury and the causal connection between the former and the latter. Unfortunately, I do not believe I have any other alternative but to grant the defendant's motion for summary judgment given the fact that suit was not filed until October 1994.
Corradino, J.