Denise **FEIGHERY**, Plaintiff,

v.

**YORK HOSPITAL, Samuel M. DiCapua, D.O., and Karen O'Neill, M.D., Defendants.**

No. Civ. 98–210–P–C.

United States District Court, D. Maine.

March 3, 1999.

Jonathan S.R. Beal, Fontaine & Beal, P.A., Portland, ME, for plaintiff.

Elizabeth A. Germaini, Friedman, Babcock & Gaythwaite, Portland, ME, for defendants York Hospital & Dr. O'Neill.

Steven J. Mogul, Goss, Minsky, Mogul & Singal P.A., Bangor, ME, for defendant Samuel M. Dicapua, D.O.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Presently before the Court are four motions pending in this action brought by Plaintiff, Denise Feighery, against Defendants, York Hospital, Samuel M. DiCapua, D.O., and Karen O'Neill, M.D., under Maine's Wrongful Death Act, 18–A M.R.S.A. § 2–804. These motions are: 1) Plaintiff's Amended Motion to Amend the Complaint (Docket No. 20); 2) Plaintiff's Motion to Amend Complaint And Request for Jury Trial (Docket No. 11); 3) Defendants York Hospital and Karen O'Neill, M.D.'s Motion to Dismiss Claims of Emotional Distress and Loss of Consortium (Docket No. 4); and 4) Defendant Samuel M. DiCapua, D.O's Motion to Dismiss (Docket No. 8).

## BACKGROUND

Because the Court is considering a motion to dismiss, the Court will set forth the facts as they are alleged in the pleadings. Mr. Kevin Feighery was transported by ambulance to York Hospital, accompanied by his wife, Mrs. Denise Feighery, on July 9, 1994. Proposed Amended Complaint (Docket Nos. 11, 20) and Complaint (Dock-et No. 1) ¶¶ 9–10. He arrived at York Hospital at approximately 5:10 p.m. suffering from an unknown emergency condition. Id. ¶ 9.

Mr. Feighery was treated by Dr. DiCapua and Dr. O'Neill who worked as emergency physicians at York Hospital. Id. ¶¶ 11, 12, 13, 14, 15. Mrs. Feighery, who had observed the onset of her husband's symptoms, repeatedly advised the doctors and other personnel at York Hospital that her husband had suffered a heart attack. Id. ¶ 16. In vain, she demanded that her husband see a cardiologist. Id. ¶ 16.

According to the Complaint, Dr. DiCapua and Dr. O'Neill negligently screened and diagnosed Mr. Feighery as having "clam enteritis" rather than a cardiac injury. Id. ¶ 17. Due to the alleged negligence of Dr. DiCapua and Dr. O'Neill, Mr. Feighery died in the hospital after suffering a seizure and a heart attack. Id. ¶ 20. Following an autopsy, a pathologist determined that the cause of Dr. Feighery's death was "acute myocardial infarction." Id. ¶ 21. Mrs. Feighery remained at the hospital with her husband at all times and witnessed her husband's seizure and heart attack. Id. ¶¶ 10, 20.

On June 28, 1996, Plaintiff filed a notice of claim pursuant to 24 M.R.S.A. § 2903. See York Hospital's and Karen O'Neill, M.D.'s Reply to Plaintiff's Objection to Motion to Dismiss (Docket No. 14) at 1. On July 3, 1996, Plaintiff filed a Complaint in this Court which was subsequently dismissed without prejudice by this Court because Plaintiff had not fully completed the state litigation screening process required for medical malpractice claims pursuant to 24 M.R.S.A. § 2851. See Civil Action No. 96–208–P–C. Plaintiff filed her initial Complaint in the present action on June 8, 1998.

## ANALYSIS

Plaintiff filed a ten-count Complaint in this Court on June 8, 1998, against Karen O'Neill, M.D., Samuel M. DiCapua, D.O.,

and York Hospital. Count I is a claim brought by Plaintiff on behalf of her husband's estate, alleging that Defendants were negligent prior to the death of her husband and caused him pain and suffering. In Count II, Plaintiff has brought a claim on her own behalf for negligent infliction of emotional distress as a result of Defendants' allegedly negligent misdiagnosis of her husband's condition prior to his death. In Count III of her Complaint, Plaintiff has brought a claim for pecuniary damages available under Maine's Wrongful Death Act, 18–A M.R.S.A. § 2–804. In Counts IV and V, Plaintiff alleges that she is entitled to damages for loss of consortium for herself (Count IV) and to damages for loss of parental relations for her children (Count V). The Complaint also contains Counts VII, VIII, IX, and IX [sic], alleging violations of the Emergency Medical Treatment and Liability Act ("EMTALA"), and further claims for infliction of emotional distress.

## I. Plaintiff's Motion to Amend the Complaint

Plaintiff filed a Motion to Amend Complaint and Request for Jury Trial with a copy of her proposed Amended Complaint on December 18, 1998 (Docket No. 11). On February 16, 1999, after Defendants filed motions to dismiss and objections to Plaintiff's motion to amend her Complaint, Plaintiff filed an Amended Motion to Amend Complaint with a proposed Amended Complaint (Docket No. 20). In her first motion to amend her Complaint, Plaintiff seeks to amend the original Complaint in the following manner:

1. To remove Counts VIII, IX, X (due to a typographical error Count X is incorrectly labeled "Count IX" in the original Complaint) pursuant to the stipulation of all parties submitted to the Court by letter of November 24, 1998.

2. To make clear in the text of Count II that it relates to Pre-death mental anguish by the Plaintiff as bystander.

3. To amend Count III to incorporate some of the separate elements alleged as pecuniary damages.

4. To eliminate Count VII as an independent count, and to amend Counts IV and V to make clear that these counts seek compensation for all non-pecuniary damages permitted under Maine's Wrongful Death Act.

In her amended motion to amend her Complaint, Plaintiff requests that the EMTALA claims, Counts VIII, IX, and X, be retained and put back in the case due to a decision recently rendered by the Supreme Court which Plaintiff believes is favorable to her on these claims. Because no prejudice shall be caused to the Defendants if the Court permits Plaintiff to amend her motion to amend the Complaint, the Court will grant Plaintiff's motion (Docket No. 20).

Accordingly, the Court considers Plaintiff's motion (Docket Nos. 11 and 20) to amend her Complaint. The Defendants have filed objections to Plaintiff's motion. Defendant Dr. DiCapua objects to Plaintiff's motion to the extent it seeks to amend Count III, and Defendants York Hospital and Dr. O'Neill object to Plaintiff's motion to the extent it seeks to amend Counts II, III, IV, and V. A single argument underlies the objections of all three Defendants to these Counts: all Defendants seek to limit the damages that are to be considered nonpecuniary under Maine's Wrongful Death Act. Additionally, Defendants object to Plaintiff's claims under EMTALA in Counts VII, IX, and X.

The cause for contention regarding Counts III, IV, and V lies in the fact that Maine's Wrongful Death Act permits unlimited recovery of pecuniary damages but places an upper limit on reasonable nonpecuniary damages. The statute reads, in relevant part:

The jury may give such damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death to the persons

for whose benefit the action is brought and in addition shall give such damages as will compensate the estate of the deceased person for reasonable expenses of medical, surgical and hospital care and treatment and for reasonable funeral expenses, *and in addition may give damages not exceeding $150,000 for the loss of comfort, society and companionship of the deceased, including any damages for emotional distress arising from the same facts as those constituting the underlying claim*, to the persons for whose benefit the action is brought, and in addition may give punitive damages not exceeding $75,000, provided that the action is commenced within 2 years after the decedent's death.

18–A M.R.S.A § 2–804(b) (emphasis added). Accordingly, pursuant to the statutory language, although there exists no limit on pecuniary damages, nonpecuniary damages for loss of comfort, society, and companionship of the deceased and for emotional distress are presently capped at $150,000. Generally, Plaintiff seeks to amend her Complaint in order to clarify for which count she seeks pecuniary damages and for which count she seeks nonpecuniary damages.

Count III of the original Complaint reads, in relevant part, as follows:

## · COUNT III: WRONGFUL DEATH (PECUNIARY LOSSES)

. . . .

29. As a result of the death of Kevin Feighery, the Plaintiff and her minor children have suffered pecuniary injuries, including lost earnings, wages and benefits.

WHEREFORE, the Plaintiff, in her capacity as personal representative of the Estate of Kevin Feighery, requests pursuant to 18–A M.R.S.A. § 2–804 that the Defendants, jointly and severally, be ordered to compensate the Plaintiff and her minor children for the pecuniary injuries, including lost earnings, wages and benefits, resulting from the death of Kevin Feighery, together with interests and costs, and for such other relief as the court deems just and proper.

Complaint, Count III ¶ 29. Thus, Count III is a request for the unlimited pecuniary damages that are available under the Wrongful Death Act.[1] In her motion to amend her Complaint, Plaintiff seeks to add to paragraph twenty-nine additional elements of the pecuniary injuries her children suffered from the loss of their parent. Specifically, she seeks to include "the pecuniary value of Kevin Feighery's services, instruction, advice, counsel, parental training, care and guidance, assistance and protection, as well as Kevin Feighery's attention to the physical, moral, and educational welfare of his children," as pecuniary losses. First Amended Complaint, Count III ¶ 29 (Docket No. 20). Defendants insist that the foregoing losses are compensated only by nonpecuniary damages under Maine's Wrongful Death Act and that, therefore, they should not be added to the list of pecuniary losses in Count III. Simply put, resolution of whether Plaintiff may amend Count III of her Complaint to include a claim for damages to recompense her children's loss of the advice, counsel, and guidance of their father requires the Court to ascertain whether such elements of loss are pecuniary.

No court has addressed the question of whether damages for the loss of parental advice, counsel, and guidance are pecuniary under Maine's Wrongful Death Act. The plain language of the Maine statute defines the nonpecuniary damages available under the statute as damages for the loss of the "comfort, society and com-

---

1. Although the Court discusses the pecuniary damages available under Maine's Wrongful Death Act as "unlimited," it does so only to illustrate that there is no statutory limit on such damages. As discussed below, by definition, pecuniary damages are those damages that are capable of being assigned a monetary value and, thus, at trial a plaintiff seeking pecuniary damages must present proof of the value her loss for which she seeks recovery.

panionship of the deceased." 18–A M.R.S.A. § 2–804(b). As discussed below, the Court concludes that the statutory cap on damages for the loss of comfort, society, and companionship does not act to limit recovery for all of the relational, as opposed to purely economic, losses that a child may suffer from the loss of a parent. Certain relational losses suffered by a child who loses a parent are, in fact, pecuniary because they are capable of being assigned a monetary value by a jury. Furthermore, the Court concludes that the elements of loss to the deceased's children that Plaintiff wishes to have added to Count III as pecuniary losses, although they are losses related to the child's personal rather than economic relationship with the deceased parent, are pecuniary in nature.

It is useful to begin with the definition of pecuniary damages. Pecuniary damages are "such as can be estimated in and compensated by money; not merely the loss of money or salable property or rights, but all such loss, deprivation, or injury as can be made the subject of calculation and of recompense in money." *Black's Law Dictionary* 392 (6th ed.1990). The Supreme Court shed further light on the meaning of pecuniary damages when it explained that pecuniary loss or damages in a wrongful death action should be equivalent to those pecuniary benefits or compensation that reasonably could have been expected to have resulted from the continued life of the deceased. *See Chesapeake & Ohio Ry. v. Kelly,* 241 U.S. 485, 489, 36 S.Ct. 630, 631, 60 L.Ed. 1117 (1916). The elements of loss that Plaintiff wishes to have categorized as pecuniary in Count III of her complaint are capable of being measured in terms of money under the plain definition. Although placing a monetary value on the loss of future guidance and advice is more difficult than quantifying the loss of the deceased's salary, these factors can be taken into consideration in determining the pecuniary value of the deceased parent to his or her surviving children. Indeed,

"[pecuniary damages] include not only money but anything that can be valued in terms of money. The fact that such matters as loss of care, training, advice, guidance and education are not readily reduced to a present money value does not mean that those factors need not be taken into consideration."

Douthwaite, *Jury Instructions on Damages in Tort Actions,* ch. 7–1, p. 270 (1981). The Kansas Supreme Court has had the occasion of considering in detail what kind of proof is necessary to support an award of pecuniary damages for the loss of services, care, and guidance. *See Wentling v. Medical Anesthesia Services, P.A.,* 237 Kan. 503, 701 P.2d 939, 944–49 (1985). Such proof includes facts showing the nature of the relationship as presented by the plaintiff and expert testimony regarding the monetary value as to certain services performed by the deceased parent. *Id.* at 947–48.

Permitting evidence regarding the limited elements of relational loss as described here to show pecuniary damages will not confuse or cause the jury to give an inflated award. A court may instruct a jury to properly assign the evidence presented regarding loss into the appropriate category of damages. A court may instruct the jury that they may give damages not exceeding $150,000 for loss of comfort, society, and companionship. Under Maine law, it is also permissible for the judge to instruct the jury that they may not increase a damage award for one category by adding an amount which they believe would be just recompense for the loss of comfort, society, companionship, and emotional distress, if any. *See Pierce v. Central Maine Power Co.,* 622 A.2d 80, 83 (Me.1993).

The prevailing view regarding the standard of proof necessary to support an award of pecuniary damages also lends support for the Court's categorization of Mr. Feighery's advice and counsel to his children as pecuniary.

As with future economic or non-economic losses in personal injury actions, the plaintiffs in wrongful death actions are not required to prove their losses with mathematical certainty. What is necessary is that each claim for a specific element of damage be supported by evidence sufficient to permit the trier of fact to determine (1) that the claimant in fact suffered a compensable loss of injury; and 2) a fair and reasonable monetary award for that loss or injury. 3 Minzer, Nates, Kimball, Axelrod, and Goldstein, *Damages in Tort Actions* § 22.02[2] (1984). Accordingly, the Court concludes that a jury is capable on the advancement of relevant evidence, of determining the monetary value of Mr. Feighery's advice, guidance, counsel, parental training, and protection to his minor children and, thus, that such damages are properly categorized as pecuniary under Maine's wrongful death statute.

Using the definition of pecuniary as set forth above, other courts have addressed whether damages for the loss of parental advice, counsel, and guidance are pecuniary under the wrongful death statutes of the states in which they sit. Overwhelmingly, these courts have held that damages for relational losses including the loss of parental advice, counsel, and guidance are pecuniary and, therefore, recoverable under the relevant wrongful death statute. *See In re Air Crash Disaster Near Cerritos, Cal.*, 982 F.2d 1271, 1278 (9th Cir.1992) (analyzing California wrongful death statute and holding that a plaintiff may recover "lost present future economic support as well as the pecuniary (as opposed to sentimental) value of such factors as lost comfort, society, companionship, care, and protection"); *McKee v. Colt Electronics Co., Inc.*, 849 F.2d 46, 50 (2d. Cir.1988) (analyzing New York wrongful death statute and holding that although children may not recover for loss of a parent's companionship, "they may recover for the pecuniary loss suffered as a result of the lost nurture, care, and guidance they

would have received if the parent had lived."); *Wentling*, 701 P.2d at 944 (analyzing Kansas wrongful death statute and holding that damages for loss of services, care, and guidance suffered by surviving children are pecuniary in nature); *Green v. Bittner*, 85 N.J. 1, 424 A.2d 210, 213 (1980) (discussing the pecuniary damages available to compensate the loss of a parent and advising that the law allows damages to be awarded to the surviving children for the loss of guidance and counsel of the parent); *Cummins v. Rachner*, 257 N.W.2d 808, 814 (Minn.1977) (analyzing Minnesota statute and holding that the jury was properly instructed that the recoverable pecuniary damages in the wrongful death action included the advice, comfort, assistance, and protection that deceased parent would have given the children had she lived); *Arrow Transport Co. v. Northwest Grocery Co.*, 258 Or. 363, 482 P.2d 519, 523 (1971) (analyzing Oregon statute and holding that pecuniary loss includes the loss of the parent's attention to the care and physical, moral, and educational welfare of her children); *Andis v. Hawkins*, 489 N.E.2d 78, 82 (Ind.Ct.App. 1st Dist.1986), *reh'g denied*, April 14, 1986, (citing *Thomas v. S.H. Pawley Lumber Co.*, 303 F.2d 604, 608 (7th Cir.1962) (interpreting 1962 statute)) (setting forth definition of pecuniary damages under Indiana wrongful death statute as including the loss to the children of their parent's care, training, and guidance sustained by the children during their minority); *Alphonse v. Sarno*, 168 N.J.Super. 315, 403 A.2d 9, 12 (App.Div.1979), *aff'd as modified*, 87 N.J. 99, 432 A.2d 857 (1981) (analyzing New Jersey wrongful death statute and holding that pecuniary loss includes loss of the care, guidance, and advice of a parent during a child's minority and does not include injury to the feelings, mental suffering, or loss of society and companionship). Thus, numerous courts have held that certain kinds of relational losses such as those Plaintiff seeks to have added to Count III are pecuniary in wrongful death actions.

Defendants argue that the plain language of Maine's Wrongful Death Act excludes the loss of a parent's advice, guidance, and counsel from the pecuniary category. Essentially, Defendants argue that the loss of a parent's guidance, advice, training, and counsel is the same as the sentimental loss of a parent's comfort, society, and companionship. However, the damages available as a result of the loss of Mr. Feighery's services, instruction, advice, counsel, parental training, care and guidance, assistance and protection, as well as Kevin Feighery's attention to the physical, moral, and educational welfare of his children, are not identical to the damages available for the loss of comfort, society, and companionship. Defendants' position is that the Court should draw a bright line between all losses that can be characterized as relational and all material or economic losses and find that all relational losses fall under "comfort, society, and companionship" and are nonpecuniary. However, this would not be in accord with the definition of pecuniary as encapsulated in Maine's Wrongful Death Act.

Finding the loss of a parent's guidance, counsel, advice, or training to be pecuniary in value does not contradict the plain language of Maine's Wrongful Death Act. These pecuniary damages are distinct from the consortium losses intended to be capped by the Maine law. The damages for loss of comfort, society, and companionship capped by the statute are the emotionally inchoate or sentimental losses traditionally recovered in loss of consortium claims. Losses traditionally recoverable in loss of consortium claims are "fellowship of husband and wife, and the right of each to the company, society, co-operation, affection, and aid of the other in every conjugal relation ... [and losses] encompassing not only material services but such intangibles as society, guidance, companionship, and sexual relations." *Black's Law Dictionary* 309 (9th ed.1990). In amending the statute to cap damages available in wrongful death actions for "loss of comfort, society,

and companionship," Maine prevented the excessive verdicts that can result in wrongful death actions when a jury is moved by the inconsolable, intangible, and emotional loss of a loved one.

The limited legislative history of the Act supports the conclusion that the limit on damages for the loss of comfort, society, and companionship of the deceased was meant to apply to traditional relational losses such as those damages available in loss of consortium cases or for psychic harm in emotional distress cases. In 1989, when the legislature amended Maine's Wrongful Death Act to limit damages for emotional distress in wrongful death actions, the sponsoring legislators for the amendment explained that "the wrongful death laws have traditionally limited the damages for loss of consortium in the case of death of a loved one." 114th Maine Legislature, Legislative Document No. 795, 1989. Furthermore, there is nothing in the legislative history indicating that the language "damages with reference to pecuniary damages" does not include relational losses, albeit ones that are capable of being assigned a monetary value. Categorizing the elements of loss presented by Plaintiff's motion to amend her Complaint is well within Maine's statute.

When interpreting wrongful death statutes that completely proscribe recovery for nonpecuniary damages, courts have preserved the distinction between the sentimental traditional consortium loss one suffers from the death of a parent and the pecuniary loss of that parent's guidance, advice, and counsel. In *McKee v. Colt Electronics,* the U.S. Court of Appeals for the Second Circuit analyzed New York's wrongful death statute. "Under New York law, wrongful death damages are limited to 'fair compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought.'" *McKee,* 849 F.2d at 50. The court noted that the New York statute does not permit recovery for

grief or for loss of society, affection, and conjugal fellowship—"all elements of the generic phrase 'loss of consortium.'" *Id.* (citing cases). That court nonetheless permitted recovery for the pecuniary loss suffered as a result of the lost nurture, care, and guidance the children beneficiaries of the deceased would have received if the parent had lived. *See id.* Likewise, in *Alfone v. Sarno,* although the New Jersey wrongful death statute does not permit recovery of lost "companionship and society as such," the court held that minor children may recover the pecuniary value of the loss of the care, guidance, and advice of a parent during their minority. 403 A.2d at 12. In each of the foregoing cases, the court distinguished damages for relational losses that are pecuniary in nature and, thus, recoverable under the wrongful death statute, from damages for relational losses that are not recoverable under the statute. Therefore, although clearly a relational, rather than a material loss, other courts have held that losses of guidance, counsel and advice are recoverable as pecuniary damages. A well-known treatise concurs: "[e]ven jurisdictions that have rejected the loss of society or consortium claim, as such, have permitted one form of it, namely a loss of guidance and advice that the decedent would have provided, at least in the case of deceased parents." *Prosser and Keeton on Torts,* Ch. 23 § 127 at 952 (5th ed.1984).

Defendant argues that these cases should not be relied upon because, unlike this case, the courts were interpreting wrongful death statutes with no provision for nonpecuniary damages. According to Defendant, these courts were, thus, straining the definition of "pecuniary damages" to avoid the harsh bar on all recovery for a child's relational loss of a parent. Because Maine's Wrongful Death Act provides recovery, albeit limited, for loss of compan-

ionship, society, and comfort, Defendants argue that the Court need not engage in a strained interpretation of "pecuniary." The Court disagrees with Defendants' characterization. When analyzing the Kansas wrongful death statute, which provides unlimited recovery for pecuniary losses and limited recovery for nonpecuniary losses, the Supreme Court of Kansas categorized as pecuniary, damages to recompense a child's loss of the services, care, and guidance of a parent wrongfully killed. *See Wentling,* 701 P.2d at 943–44. That court characterized nonpecuniary damages generally as intangible and as including mental anguish, bereavement, loss of society, and loss of companionship. *See Id.* at 943. Furthermore, the Court finds that the loss of the advice, guidance, and counsel of a parent is pecuniary by definition. Accordingly, even where a wrongful death statute provides recovery for both pecuniary and nonpecuniary losses and limits damages available for nonpecuniary losses, the loss of a parent's advice, guidance, and counsel, is correctly categorized as a pecuniary loss.

While the Court recognizes that reliance on decisions from other states may be a matter of delicate touch because the wrongful death statutes vary from state to state, the rule followed in those states appears to the Court to be the better and more equitable rule and well within Maine's statute. Furthermore, the loss of "Kevin Feighery's services, instruction, advice, counsel, parental training, care and guidance, assistance and protection, as well as Kevin Feighery's attention to the physical, moral, educational welfare of his children" are pecuniary within that term's definition. Accordingly, the Court concludes that these losses are distinguished from emotional consortium losses such as the loss of "comfort, society and companionship," capped by the statute.[2] Plaintiff

---

**2.** Although the legislative history does not provide insight into whether the loss of a parent's counsel, guidance, and advice is properly considered pecuniary under the act,

nothing in the legislative history points to a result different from the Court's decision here. The legislature distinguished between pecuniary and nonpecuniary damages for the

may, therefore, amend her Complaint to add the elements of loss as drafted in the First Amended Complaint (Docket No. 20) to Count III as pecuniary damages.[3]

■ Plaintiff also requests that she be permitted to amend her Complaint to clarify that Counts IV and V seek compensation for *nonpecuniary* damages permitted under Maine's Wrongful Death Act and to remove Count VII from the Complaint because it is duplicative of Counts IV and V. Counts IV and V state, in relevant part, as follows:

## COUNT IV: WRONGFUL DEATH (LOSS OF CONSORTIUM)

. . . .

31. As a direct and proximate result of the Defendants' negligence, Plaintiff Denise Feighery has suffered the loss of comfort, society and companionship of her husband, and has suffered emotional pain and anguish subsequent to his death.

Wherefore, the Plaintiff in her capacity as personal representative of the Estate of Kevin Feighery, demands pursuant to 18-A M.R.S.A. § 2-804 that the Defendants, jointly and severally, be ordered to compensate the plaintiff for the damages set forth in the preceding paragraph, together with interest and costs, and for such other relief as the court deems just and proper.

## COUNT V: WRONGFUL DEATH (LOSS OF PARENTAL RELATIONS)

. . . .

33. As a direct and proximate result of the Defendants' negligence, minor children Stephen Feighery and Justine Feighery have suffered the loss of the comfort, society and companionship of their father, and have

first time in 1967, when it amended the statute to provide for the limited recovery of damages for the loss of comfort, society, and companionship. *See* 1967 P.L., ch. 369. In 1989, the legislature amended the statute again to permit plaintiffs to present evidence of emotional distress in order to recover additional nonpecuniary damages. *See* 1989 P.L., ch. 340. Prior to 1965, the legislature provided for the recovery of pecuniary damages only, and these were subject to a statutory limit. In 1965, after extensive debate, the legislature amended the statute to remove the limit on pecuniary damages available in wrongful death actions. *See* 1965 P.L., ch. 255; 1965 Legislative Record, 1302-6, 1617-25, 1679-86, 1714-15.

Thus, the legislature regards the unlimited damages available under the statute as pecuniary and limits nonpecuniary damages. But for a momentary anomaly in 1967, the legislature has described damages for the loss of comfort, society, and companionship as nonpecuniary. In 1967, when the act was amended to include, for the first time, recovery for loss of comfort, society, and companionship of a minor, the legislature stated that it was amending the act to include such losses as pecuniary, rather than nonpecuniary, injuries. *See* Legislative Document No. 1219, 1967. Since that date, however, the legislature has described the damages available for the loss of comfort, society, and companionship, and for emotional distress as nonpecuniary. *See* Legislative Document, No. 742, Statement of Fact (1995) (this amendment replaces the original bill with a cap of $150,000 on *nonpecuniary* damages for the family members to compensate for their loss.) (emphasis added). Furthermore, the Court's conclusion here is supported by the legislative document for the 1989 amendment to the Act which describes the damages for loss of comfort, society, and companionship as damages for loss of consortium. *See* Legislative Document No. 795 (1989).

3. The Court adds that this holding is well in accord with the principle of deciding each case on its merits rather than formulating bright-line rules limiting recovery for certain types of pecuniary injuries. Certainly, for purposes of Count III, Defendants are free to file motions *in limine* to object to proof of loss that tends to show the nonpecuniary loss of the companionship and comfort that Kevin Feighery provided for his children. Plaintiff may recover on behalf of her children only those losses that she can demonstrate have a monetary value. The Court is unwilling to foreclose the possibility that Plaintiff may be able to demonstrate the monetary value of this loss at the complaint-drafting and motion to dismiss stages.

suffered emotional distress as a result of his death.

Wherefore, the Plaintiff in her capacity as personal representative of the Estate of Kevin Feighery, demands pursuant to 18–A M.R.S.A. § 2–804 that the Defendants, jointly and severally, be ordered to compensate the minor children of Kevin Feighery for the damages set forth in the preceding paragraph, together with interest and costs, and for such other relief as the court deems just and proper.

Complaint, Counts IV, V ¶¶ 30–33. Plaintiff seeks to replace the parentheticals in the above titles of Counts IV and V with **(Widow's Non–Pecuniary Losses)** and **(Children's Non–Pecuniary Losses)**, respectively. The Court agrees that the damages sought in Counts IV and V for the loss of the comfort, society, and companionship of Mr. Feighery are nonpecuniary losses according to the plain language of Maine's Wrongful Death Act. Accordingly, the Court will, in the exercise of its discretion, permit Plaintiff to amend her Complaint to replace the parenthetical language of Counts IV and V, to clarify that these counts pertain to nonpecuniary damages, and to remove Count VII because it is duplicative of Counts IV and V.

The Court will also grant Plaintiff's request to amend Count II of her Complaint. In Count II, Plaintiff sets out a claim for emotional distress and alleges, in relevant part, the following:

### COUNT II: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

#### (Pre–Death)

■ . . . .

27. The Plaintiff has suffered mental anguish as a result of her husband's suffering, the circumstances she witnessed at the time of his treatment and her repeated but unsuccessful efforts to convince the hospital staff that her husband should be treated for a heart attack and that he required the services of a cardiologist, and the Defendant's negligence in connection with these events.

Plaintiff seeks to amend Count II as originally set forth in her Complaint to further clarify that this claim is for negligent infliction of emotional distress prior to the death of her husband. Accordingly, she seeks to add the phrase, "Prior to her husband's death," to begin paragraph twenty-seven. Defendants York Hospital and Dr. O'Neill argue that the Court should deny Plaintiff's motion to amend Count II because the Wrongful Death Act is the exclusive cause of action for emotional distress arising from a set of operative facts to which the Act applies. Accordingly, they say the Court should deny Plaintiff's request for leave to amend Count II because the amendment would be futile.

The Court will grant Plaintiff's motion to amend Count II of the Complaint to add the introductory phrase, "Prior to her husband's death" to paragraph twenty-seven.he amendment serves only to clarify that Count II applies only to the facts pertaining to the period prior to her husband's death. As the Complaint clearly states "Pre–Death," the proposed amendment does not seek to make any substantive changes to the claim contained in Count II. Defendants' argument that the claim alleged in Count II is futile because the emotional distress claim is precluded by the Maine Wrongful Death Act is more properly addressed upon consideration of Defendants' motions to dismiss. The Plaintiff may amend Count II in the manner requested so as to clarify that her claim for emotional distress arises only out of the facts that occurred during the period prior to her husband's death.

■ Finally, Plaintiff requests that her Complaint retain the EMTALA claims in Counts VII, IX, and X, which the parties previously stipulated to dismiss on November 24, 1998 (Docket No. 6). Allowance of the proposed amendment to include these

claims will cause no prejudice to any party as little time has passed since the issuance of the Court's Scheduling Order on November 24, 1998, and there remains adequate time for whatever additional discovery will be occasioned by the retention of the EMTALA claims. Thus, the Court will, in its discretion, grant Plaintiff's claims in Counts VII, IX, and X. Accordingly, the Court will grant Plaintiff's motion to amend her Complaint (Docket Nos. 11, 20) in its entirety.

## II. Motion for Jury Trial

Plaintiff's motion to amend her Complaint (Docket No. 11) contains a request for a jury trial. Plaintiff filed a motion for trial by jury with her first Complaint, and Defendants have not objected to the case being tried by a jury. Accordingly, the Court will grant Plaintiff's motion for a jury trial.

### III. Defendants' Motions to Dismiss

■ Having determined that it will grant Plaintiff's motion to amend her Complaint, the Court will now consider whether it should grant or deny Defendants' motions to dismiss.[4] A motion to dismiss tests the legal sufficiency of the complaint and thus does not require the court to examine the evidence at issue. *See Carey v. Mt. Desert Island Hospital,* 910 F.Supp. 7, 9 (D.Me.1995). The plaintiff must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory. *See Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). A Rule 12(b)(6) motion then requires the court to take all of the plaintiff's factual averments as true and indulge every reasonable inference in the plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). However, the court need not accept "bald assertions" or "unsubstantiated conclu-

sions." *See id.* at 52. A motion will be granted only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff to relief. *See Gooley,* 851 F.2d at 514.

In their motions to dismiss, Defendants contend the following: (1) that Maine's wrongful death statute's cap applicable to this case is the $75,000 in effect in July of 1994, rather than the $150,000 cap on damages currently in effect; (2) that the statutory cap for nonpecuniary damages available under the Wrongful Death Act applies to Counts II, IV, V, and VII of Plaintiff's Complaint; and (3) that Counts IX and X ("IX") should be dismissed because they are precluded by Maine's Wrongful Death Act.

The Court need not address Defendants' arguments to dismiss Counts IX, X ("IX") and VII. Defendants' arguments regarding Counts IX, X("IX") and VII are moot in light of the Court's granting of Plaintiff's motion to amend the Complaint to remove these claims. With respect to the remainder of Defendants' claims regarding Counts II, IV, and V, the Court notes that Defendants do not seek to dismiss the claims in their entirety, but rather contend that they are subject to the cap contained in Maine's wrongful death statute for nonpecuniary damages. The issue is whether the total aggregate recovery on counts II, IV, and V is subject to the statutory limit on damages, not whether Plaintiff may or may not present one or more of the theories for recovery in the case.

### 1. Amount of applicable statutory cap.

■ The first task of the Court is to ascertain which version of the statutory limit on nonpecuniary consortium and emotional distress damages, applies to Plaintiff's wrongful death action. The fundamental rule of statutory construction under Maine law is that "all statutes will be

---

4. Although Dr. DiCapua filed a motion separate from the motion filed by York Hospital and Dr. O'Neill, the Court will consider them together because they raise identical conten-

tions and Dr. DiCapua adopted the arguments set forth in York Hospital's and Dr. O'Neill's motion.

considered to have a prospective operation only, unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used." *Terry v. St. Regis Paper Co.,* 459 A.2d 1106, 1109 (Me.1983); *see also* M.R.S.A. Const. Art. IV, Pt. 3, § 16 ("No Act or joint resolution of the Legislature ... shall take effect until ninety days after the recess of the session in which it was passed, unless in case of emergency ... the Legislature shall ... otherwise direct"). The statutory history of Maine's Wrongful Death Act relevant to the recovery of nonpecuniary damages up to year 1987, already partly set forth in this opinion, as stated by the Maine Law Court is as follows:

> The Maine wrongful death statute contained no provision for the recovery of damages "for the loss of comfort, society and companionship of the deceased" until P.L.1967, ch. 369, which even then did not include a child in the class of its beneficiaries and which limited aggregate recovery to $5,000. The legislature increased that aggregate limit to $10,000 in P.L.1969, ch. 266. Not until P.L.1977, ch. 192 did the legislature adopt the forerunner of our present 18-A M.R.S.A. § 2-804, ... which for the first time permitted damages for psychic loss by children in a wrongful death action; but under that 1977 enactment any recovery for the psychic harm suffered by all beneficiaries of the deceased was limited to $10,000 in the aggregate. The legislature in P.L.1981, ch. 213 raised the ceiling on that aggregate recovery to ... $50,000.

*Durepo v. Fishman,* 533 A.2d 264, 266 n. 3 (Me.1987). Thereafter, the legislature increased the aggregate recovery in P.L. 1989, ch. 340 to $75,000 and provided that the amount includes recovery for emotional distress. In 1995, the legislature increased the aggregate recovery again, in P.L.1995, ch. 577, § 1, to the present $150,000. Unless the legislature specifically otherwise provides, legislation takes effect ninety days after the recess of the session in which it was passed. *See*

M.R.S.A. Const. Art. IV, Pt. 3, § 16. The amendment raising the statutory cap on nonpecuniary loss of consortium and emotional distress damages to $150,000 was approved during the second regular session of the 117th Legislature, whose adjournment was on April 4, 1996, *see* M.R.S.A. Vol. 10, at XVII, XX, and, accordingly, it went into effect on July 4, 1996.

Defendants contend that the $150,000 cap does not apply to this case pursuant to the rule of statutory construction contained in 1 M.R.S.A. § 302. Not surprisingly, Plaintiff disagrees. Section 302 of Title 1 provides that "[a]ctions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby." Defendants claim that Plaintiff's claim was pending as of July 3, 1996, the day that Plaintiff filed her first Complaint in this Court and after she had filed a notice of claim in state court. *See* Civil Action No. 96–208–P–C. Plaintiff argues that her case was not pending on July 3, 1996, because the Complaint filed on that date was subsequently dismissed without prejudice. *See* Civil Action No. 96–208–P–C (Docket No. 20). At the time of her first Complaint, Plaintiff had filed a Notice of Professional Negligence but had not yet completed the prelitigation screening process required under 24 M.R.S.A. § 2581. According to Plaintiff, the present action was not filed until June 8, 1998, almost two years after the effective date of the $150,-000 damage cap amendment and, thus, 1 M.R.S.A. § 302 does not apply to bar application of the 1995 amendment because the action was not pending.

The Court agrees with the Plaintiff and concludes that Plaintiff's action was not pending on July 3, 1996. The Court dismissed, upon Defendants' motion, Plaintiff's July 3, 1996 Complaint on January 10, 1997. *See* Civil Action No. 96–208–P–C (Docket No. 20). Therefore, although a Complaint filed by Plaintiff in this Court,

based on the same set of facts as in the present case, was pending on July 3, 1996, it was not pending after January 10, 1997, and is not the Complaint in the present case. *This* action commenced on June 8, 1998, when Plaintiff filed her Complaint *in this case*. Because this action was not pending at the time the statute was enacted to raise the statutory cap on damages, 1 M.R.S.A. § 302 does not bar application of the higher statutory limit on damages.[5]

The Court must next consider whether the higher cap of $150,000 does not apply because although Plaintiff's claim was not pending prior to the amendment of the wrongful death statute, it *accrued* prior to the amendment. Absent any pending action or proceeding and absent any legislative statement to the contrary, the judicially created presumption applies to the affect that procedural changes apply to preexisting, inchoate interests and that substantive changes do not do so. *See Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 628 (Me.1994). Thus,

"[f]or actions not pending at the time of the [enactment of the 1996 amendment increasing the cap from $75,000 to $150,-000], but based upon a pre-enactment death, the retroactivity analysis depends on whether a court considering this issue characterizes the damage cap increase as 'procedural or remedial'—thus applicable to actions accruing prior to the date of its enactment—or as affecting a substantive change, that is, [that] it determines the legal significance of operative events occurring prior to its effective date by impairing rights or creating liabilities."

Zillman, Simmons & Gregory, *Maine Tort Law*, § 19.06, n. 140 (1997 update). Substantive legislation is that which "radically affect[s] rights and obligations" of the parties. *See Batchelder v. Tweedie*, 294 A.2d 443, 445 (Me.1972). The statutory cap on

damages is remedial in nature because it merely affects the upper limit of the amount which a party may recover for her injuries and in no way changes any of the underlying rights or obligations of defendants. *See id.* (classifying newly enacted provisions for prejudgment interest as remedial); *see also Schlear v. Fiber Materials, Inc.*, 574 A.2d 876, 878 (Me.1990) (classifying newly enacted provision providing for attorney fees under workers compensation statute as remedial). Therefore, because Plaintiff's cause of action had accrued upon Mr. Feighery's death, prior to the enactment raising the upper limit from $75,000 to $150,000 for consortium and emotional distress damages, and because such amendment is remedial in nature, the $150,000 statutory cap applies to Plaintiff's claims to recover damages for emotional distress and loss of consortium caused by the deceased's death.

### 2. Counts II, IV, and V.

The Court must now determine whether the statutory cap on recovery available for loss of consortium and emotional distress applies to Plaintiff's particular claim for negligent infliction of emotional distress in Count II and Plaintiff's loss of consortium claims brought on her behalf and on behalf of her children in Counts IV and V. There is no dispute that the statutory cap applies to Plaintiff's loss of consortium claims contained in Counts IV and V. of Plaintiff's First Amended Complaint (Docket No. 20). As previously discussed, *supra* I, the plain language of Maine's wrongful death statute limits damages available for the loss of comfort, society, and companionship of the deceased and infliction of emotional distress. Plaintiff has amended the Complaint to clarify that Counts IV and V seek nonpecuniary damages for loss of consortium and admits that Counts IV and V, as clarified in the Amended Complaint, should be subject to the damage cap under

---

5. The Court also disagrees with Defendants' suggestion that Plaintiff's claim was pending according to 1 M.R.S.A. § 302 by virtue of the fact that she filed a notice of claim that was

being reviewed according to the prelitigation screening process required under 24 M.R.S.A. § 2851 at the time Maine's wrongful death statute was amended.

Maine's Wrongful Death Act. *See* Plaintiff's Objection to Motions to Dismiss Filed by Defendants York Hospital, Karen O'Neill, M.D., and Samuel M. DiCapua, D.O. Regarding Claims of Emotional Distress and Loss of Consortium at 5. Accordingly, the total amount of damages recoverable for Counts IV and V is $150,000.

 The final issue for the Court to consider is whether the statutory cap of $150,000 also applies to Plaintiff's negligent infliction of emotional distress claim in Count II. Recovery for wrongful death in Maine is a purely statutory right. *See Krempels v. Mazyck*, 868 F.Supp. 355, 357 (D.Me.1994). Accordingly, the beneficiaries of such an action are limited to the remedies specifically made available under Maine's Wrongful Death Act. As mentioned, the Maine wrongful death statute limits recovery for "any damages for emotional distress arising from the same facts as those constituting the underlying claim." 18–A M.R.S.A. § 2–804(b); *see also Krempels*, 868 F.Supp. at 358 (explaining that the Maine legislature amended the wrongful death statute to limit recovery for emotional distress to reverse the effect of the Law Court's decision in *Purty v. Kennebec Valley Medical Center*, 551 A.2d 858 (Me.1988), permitting a plaintiff to recover under a separate claim for the negligent infliction of emotional distress she suffered from the death of her infant daughter). Accordingly, "[w]here the wrongful death statute applies ... emotional distress claims may not be brought independently of the statute." *See Krempels*, 868 F.Supp. at 358 (quoting Donald N. Zillman, *et al., Maine Tort Law* § 190.06 at 19–27 (1994 update)).

Plaintiff attempts to circumvent the purview of the statute by arguing that Maine's wrongful death statute does not apply to her claim for negligent infliction of emotional distress contained in Count II because it is based on pre-death conduct. Specifically, she contends that because she alleges that her emotional distress was negligently inflicted by Defendants when she observed them negligently misdiagnose her husband's cardiac condition rather than when her husband died, Maine's Wrongful Death Act does not apply to cap the damages recoverable on this claim. According to the statute's plain language, however, the Wrongful Death Act applies to the situation where the decedent's death was allegedly "caused by a wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." *Id.* (quoting 18–A M.R.S.A § 2–804(a)). Furthermore, the wrongful death statute caps damages for emotional distress *"arising from the same facts as those constituting the underlying claim...."* *See* 18–A M.R.S.A. § 2–804(b) (emphasis added). A wrongful death claim would, thus, not exist without the facts relating to the cause of the allegedly wrongful death and, accordingly, pre-death facts regarding the cause of the allegedly wrongful death are within the purview of the wrongful death statute.

In this case, a review of the Amended Complaint demonstrates that the same facts which give rise to the wrongful death claim in Count III are the operative facts in the emotional distress claim of Count II. Count II incorporates the preceding paragraphs and only the additional allegation contained in paragraph 27—that Plaintiff suffered severe mental anguish as a result of witnessing her husband's suffering and her repeated but unsuccessful efforts to convince hospital staff that her husband needed a cardiologist. *See* Amended Complaint, ¶ 27. Thus, Plaintiff's negligent infliction of emotional distress claim, based on the Defendants' misdiagnosis of Plaintiff's husband, clearly arises from the same facts as those constituting the wrongful death claim in this case. Accordingly, the wrongful death statute provides the only remedies permitted in this case. *See Perz v. Clough*, Maine Superior Court, Civil Docket No. 93–282.

The case at bar is indistinguishable from *Krempels*. In *Krempels*, this Court refused to permit a separate claim for negli-

gent infliction of emotional distress where the deceased's husband attempted to base the claim on the facts preceding the death of his wife that consisted of his observance of the fatal accident. *See id.* at 357–58. This Court held that the one route of recovery for the emotional suffering sustained by Mr. Krempels was under the Wrongful Death Act. *See id.* Here, Plaintiff has attempted to circumvent the statute in the same manner as the plaintiff in *Krempels* and to recover for emotional distress caused by the allegedly negligent pre-death acts by Defendants. Under *Krempels,* a claim for emotional distress based on the observance of the events that caused the deceased's death, as the Plaintiff has attempted to do here, is a claim that arises out of the same set of operative facts as the wrongful death claim.[6] Because there is no set of facts alleged in Plaintiff's Amended Complaint that would entitle Plaintiff to damages for negligent infliction of emotional distress beyond what is available under the Wrongful Death Act, the Court will grant Defendants' Motion to Dismiss Count II insofar as it seeks recovery beyond $150,000. To conclude, the total recovery permitted on Counts II, IV, and V is limited to $150,000.

### 3. Counts VII, IX, and X.

Defendants also move to dismiss Plaintiff's claims brought under EMTALA in Counts VIII, IX, and X. Defendants contend that the Court must dismiss these claims because Plaintiff is not entitled to additional recovery for the same claims asserted under Maine's Wrongful Death Act. The Court agrees that Plaintiff is limited to the damages available under the wrongful death statute. *See* 42 U.S.C. § 1395dd(d)(2)(A) ("Any individual who suffers personal harm as a direct result of a participating hospital, obtains those damages available for personal injury under the law of the state in which the hospital is located, and such equitable relief as is appropriate."). The fact that Plaintiff's damages are limited by the statute to those damages available under state law does not, however, foreclose Plaintiff from presenting a claim for recovery under EMTALA to the jury. Double recovery is prohibited in this case because EMTALA limits the damages available upon recovery to those damages available under state law. However, Plaintiff is not precluded from seeking to establish liability of the Defendants under alternative legal theories. Accordingly, Defendants' motions to dismiss Counts VIII, IX, and X are denied to the extent that it seeks to dismiss the EMTALA claims and granted insofar as it seeks to limit the damages available on Counts VIII, IX, and X to those damages available under state law for wrongful death.

### CONCLUSION

Accordingly, the Court **ORDERS** that Plaintiff's Motion to Amend the Motion to

6. Plaintiff argues that the Law Court's decision in *Nelson v. Flanagan,* 677 A.2d 545 (Me.1996), granting summary judgment in favor of defendant on plaintiffs' claims for emotional distress based on the medical misdiagnosis of their wife and mother that caused her death changes the rule of *Krempels.* In that case, the Law Court noted that medical misdiagnosis in an appropriate case may result in an allowable claim for negligent infliction of emotional distress. *See id.* at 549. This Court does not disagree with the general proposition that facts relating to medical misdiagnosis could give rise to a claim for negligent infliction of emotional distress. However, when death is the result of the medical misdiagnosis, Maine's wrongful death statute applies. Maine's wrongful death statute is clear that recovery for emotional distress that arises out of the same set of operative facts as the wrongful death claim are limited to $150,-000. Thus, there is no allowable claim for negligent infliction of emotional distress independent from the remedy permitted under the wrongful death statute for the conduct that caused the allegedly wrongful death. Such is the case here. Furthermore, the Law Court specifically noted that it was not addressing defendants' argument that the plaintiff's individual negligent infliction for emotional distress claim was barred by the Wrongful Death Act, 18–A M.R.S.A. § 2–804. *See id.* at 546 n. 1. Thus, the Law Court's decision in *Nelson* does not call this Court's reasoning in *Krempels* into question.

159

Amend the Complaint (Docket No. 20) be, and it is hereby, **GRANTED.** In addition, the Court **ORDERS** that Plaintiff's Motion to Amend the Complaint and Request for Jury Trial, as amended (Docket Nos. 11 and 20), be, and it is hereby, **GRANTED.** The Court **FURTHER ORDERS** that Defendants York Hospital and Karen O'Neill, M.D.'s Motion to Dismiss Claims of Emotional Distress and Loss of Consortium (Docket No. 4) and Defendant Samuel DiCapua, D.O.'s Motion to Dismiss (Docket No. 8) be, and they are hereby, **DENIED** in part and **GRANTED** in part. Defendants' motions are **DENIED** to the extent that they seek to apply the $75,000 statutory cap to this action. Defendants' motions are **GRANTED** insofar as they seek to limit the total damages recoverable on Counts II, IV, and V to $150,000. Defendants' motions are **GRANTED** insofar as they seek to limit the damages available on the EMTALA claims to those damages available under state law.

So **ORDERED.**